UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

P. CHRISTOPHER LEARY,

        Plaintiff,

     -against-

WAFRA INVESTMENT ADVISORY
GROUP, INC. and FAWAZ AL-MUBARAKI,

        Defendants.

Case No. 1:18-cv-00048-LTS-HBP

## DEFENDANT WAFRA INC.'S MEMORANDUM OF LAW IN
## <u>OPPOSITION TO MOTION TO DISMISS AMENDED COUNTERCLAIMS</u>

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

*Counsel for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL ALLEGATIONS ................................................................................................... 3

LEGAL STANDARD................................................................................................................ 5

ARGUMENT ............................................................................................................................. 5

   I.  WAFRA ADEQUATELY PLEADS A COUNTERCLAIM FOR BREACH OF
      CONTRACT. ...................................................................................................................... 5

      A.  Wafra's Employee Handbook Is A Valid and Enforceable Contract Between Wafra and
         Leary. ........................................................................................................................... 6

      B.  Wafra Adequately Alleges that Leary Breached Specific, Material Terms of Its
         Employee Handbook. .................................................................................................... 9

      C.  Wafra Adequately Pleads Damages Suffered As A Result of Leary's Breach of
         Contract. ..................................................................................................................... 10

      D.  Wafra's Contract Claim Is Not Duplicative of Its Breach of Fiduciary Duty Claim. ..... 11

  II.  WAFRA ADEQUATELY PLEADS A COUNTERCLAIM FOR BREACH OF
      FIDUCIARY DUTY............................................................................................................ 13

      A.  Wafra Alleges Actionable Misconduct in Support of Its Claim for Breach of the Duty of
         Loyalty. ...................................................................................................................... 13

      B.  Wafra Adequately Pleads Damages Suffered As A Result of Leary's Breach of the Duty
         of Loyalty. .................................................................................................................. 15

  III. WAFRA'S COUNTERCLAIMS ARE NOT RETALIATORY. ....................................... 17

CONCLUSION.......................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anthem, Inc.* v. *Express Scripts, Inc.*,
No. 16 Civ. 2048, 2017 WL 1134765 (S.D.N.Y. Mar. 23, 2017) ...........................5

*Apple Mortg. Corp.* v. *Barenblatt*,
162 F. Supp. 3d 270 (S.D.N.Y. 2016)........................................................................6

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009)................................................................................................5, 9

*Baron* v. *Port Auth. of N.Y. & N.J.*,
271 F.3d 81 (2d Cir. 2001)........................................................................................7

*Carco Grp.* v. *Maconachy*,
383 F. App'x 73 (2d Cir. 2010) ...............................................................................15

*CMG Holdings Grp.* v. *Wagner*,
No. 15 Civ. 5814 (JPO), 2016 WL 4688865 (S.D.N.Y. Sept. 7, 2016)...................8

*Consolidated Risk Servs., Inc.* v. *Auto. Dealers WC Self Ins. Trust*,
No. 06 Civ. 871, 2007 WL 951565 (N.D.N.Y. Mar. 27, 2007)...............................12

*In re Cross Media Mktg. Corp.*,
367 B.R. 435 (Bankr. S.D.N.Y. 2007).....................................................................14

*Currier, McCabe & Assocs., Inc.* v. *Maher*,
75 A.D.3d 889 (3d Dep't 2010) ................................................................................6

*Delville* v. *Firmenich Inc.*,
920 F. Supp. 2d 446 (S.D.N.Y. 2013).....................................................................17

*Eternity Glob. Master Fund Ltd.* v. *Morgan Guar. Trust Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004).......................................................................................6

*Evans* v. *Ithaca Urban Renewal Agency*,
205 A.D.2d 844 (3d Dep't 1994) ..............................................................................6

*Flores* v. *Mamma Lombardis of Holbrook, Inc.*,
942 F. Supp. 2d 274 (E.D.N.Y. 2013) .....................................................................17

*Gregory* v. *Stewart's Shops Corp.*,
No. 14 Civ. 00033, 2017 WL 4326518 (N.D.N.Y. Sept. 28, 2017) .........................8

ii

*Harsco Corp.* v. *Segui*,
  91 F.3d 337 (2d Cir. 1996)...................................................................................6

*In re Initial Public Offering Sec. Litig.*,
  241 F. Supp. 2d 281 (S.D.N.Y. 2003)..................................................................10

*La Barte* v. *Seneca Resources Corp.*,
  285 A.D.2d 974 (4th Dep't 2001) .........................................................................12

*Levy* v. *Young Adult Institute, Inc.*,
  103 F. Supp. 3d 426 (S.D.N.Y. 2015)...............................................................15, 16

*LivePerson, Inc.* v. *24/7 Customer, Inc.*,
  83 F. Supp. 3d 501 (S.D.N.Y. 2015).....................................................................10

*Mercer Health & Benefits LLC* v. *DiGregorio*,
  No. 18 Civ. 1805 (JGK), 2018 WL 1737625 (S.D.N.Y. Apr. 5, 2018)....................14

*Mumin* v. *Uber Techs.*,
  239 F. Supp. 3d 507 (S.D.N.Y. 2017).....................................................................9

*N. Shipping Funds I, LLC* v. *Icon Capital Corp.*,
  921 F. Supp. 2d 94 (S.D.N.Y. 2013)......................................................................12

*N. Shipping Funds I, LLC* v. *Icon Capital Corp.*,
  No. 12 Civ. 3584 (JCF), 2013 WL 1500333 (S.D.N.Y. Apr. 12, 2013)..................11

*Phansalkar* v. *Andersen Weinroth & Co., L.P.*,
  344 F.3d 184 (2d Cir. 2003).................................................................................16

*Pinsky* v. *JP Morgan Chase & Co.*,
  576 F. Supp. 2d 559 (S.D.N.Y. 2008).....................................................................6

*Pozner* v. *Fox Broad. Co.*,
  59 Misc.3d 897 (N.Y. Sup. 2018)........................................................................1, 7

*Rozenzweig* v. *ClaimFox, Inc.*,
  251 F. Supp. 3d 449 (E.D.N.Y. 2017) ....................................................................8

*Russo* v. *United Recovery Sys., LP*,
  No. 14 Civ. 851 (RJD) (VVP), 2014 WL 7140498 (E.D.N.Y. Dec. 12, 2014).......10

*Sanders* v. *Madison Sq. Garden, L.P.*,
  No. 06 Civ. 589 (GEL), 2007 WL 1933933 (S.D.N.Y. July 2, 2007)....................16

*Sergeants Benevolent Assoc. Annuity Fund* v. *Renck*,
  19 A.D.3d 107 (1st Dep't 2005) ...........................................................................12

*Sharkey* v. *J.P. Morgan Chase & Co.*,
No. 10 Civ. 3824, 2011 WL 135026 (S.D.N.Y. Jan. 14, 2011)..............................................7

*Stanley* v. *Skowron*,
989 F. Supp. 2d 356 (S.D.N.Y. 2013)..................................................................................16

*Torres* v. *Gristedes Operating Corp.*,
628 F. Supp. 2d 447 (S.D.N.Y. 2008)..................................................................................17

*U.S. Network Servs., Inc.* v. *Frontier Commc'ns of West, Inc.*,
115 F. Supp. 2d 353 (W.D.N.Y. 2000).................................................................................13

*UPS Store, Inc.* v. *Hagan*,
99 F. Supp. 3d 426 (S.D.N.Y. 2015).......................................................................................5

*USAirways Group, Inc.* v. *British Airways PLC*,
989 F. Supp. 482 (S.D.N.Y. 1997).......................................................................................11

*Webb* v. *Robert Lewis Rosen Assocs., Ltd.*,
No. 03 Civ. 4275 (HB), 2003 WL 23018792 (S.D.N.Y. Dec. 23, 2003) *aff'd*,
128 F. App'x 793 (2d Cir. 2005) .........................................................................................16

*Werman* v. *Excel Dentstry, P.C.*,
No. 13 Civ. 7028 (DAB), 2014 WL 846723 (S.D.N.Y. Feb. 25, 2014) ................................17

*World Capital, L.P.* v. *Preferred Fragrance, Inc.*,
43 F. Supp. 3d 236 (S.D.N.Y. 2014)....................................................................................12

*Xpedior Creditor Trust* v. *Credit Suisse First Boston (USA) Inc.*,
341 F. Supp. 2d 258 (S.D.N.Y. 2004)..............................................................................10, 11

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 13(a)(1) ..............................................................................2, 17

Federal Rule of Civil Procedure 8(a)(2) ....................................................................................9

Restatement (Third) of Agency § 8.05 (2006)...........................................................................14

Defendant-Counterclaimant Wafra Investment Advisory Group, Inc., d/b/a Wafra Inc. ("Wafra"), respectfully submits this memorandum of law in opposition to Plaintiff P. Christopher Leary's Motion to Dismiss the Amended Counterclaims (the "Motion" or "Mot.").

## PRELIMINARY STATEMENT

None of the arguments in Leary's Motion provide a sufficient basis to dismiss Wafra's Amended Counterclaims (the "Counterclaims" or "ACC") with prejudice.

First, Leary argues that Wafra's breach of contract claim should be dismissed because Wafra's Employee Handbook is not a viable contract and Wafra fails to allege how Leary's breaches caused Wafra damages. But it is well established that a claimant need not allege *how* the alleged breach gave rise to its damages, so long as it alleges cognizable damages—which Wafra does. And New York courts have held as recently as three months ago that where, as here, an employee expressly agreed to comply with an employee handbook's terms and that such compliance was a condition of his employment, violation of those terms may give rise to a breach of contract claim. *See Pozner* v. *Fox Broad. Co.*, 59 Misc.3d 897, 899 (N.Y. Sup. 2018). Leary does not distinguish that recent precedent.

Second, Leary argues that Wafra's breach of contract claim should be dismissed as duplicative of Wafra's breach of fiduciary duty claim because it relies on the same alleged misconduct. That argument ignores ample precedent holding that the same misconduct can support separate claims for breach of contract and breach of fiduciary duty so long as the alleged fiduciary duty exists independent of the contract at issue and the damages sought for each are distinct. Both are true here.

Third, Leary seeks dismissal of Wafra's breach of fiduciary duty claim on two grounds. Primarily, he contends that Wafra does not plead misconduct to support an actionable breach of the duty of loyalty claim. To the contrary, Wafra specifically alleges that Leary

breached his duty of loyalty when he repeatedly used Wafra's information systems to secretly send Wafra's confidential and proprietary business information to his Gmail address for personal use. Wafra also alleges that Leary breached his duty of loyalty to Wafra by acting as a "faithless servant"—a well-recognized theory of breach that does not require allegations of corporate usurpation or damages. Alternatively, Leary claims that Wafra does not adequately plead damages in support of a breach of the duty of loyalty. But as with its breach of contract claim, Wafra adequately alleges cognizable damages arising from Leary's breach of fiduciary duties, and is not required to allege the specific quantum of damages or how Leary's breaches caused Wafra to suffer those damages. And, in any event, both of these arguments are limited to Wafra's duty of loyalty claim. Leary's Motion does not even address Wafra's claim that Leary breached his fiduciary duties of fidelity and good faith.

Finally, and grasping at straws for any legal grounds on which the Counterclaims should be dismissed, Leary asks this Court to deem Wafra's allegations evidence of its improper retaliation against Leary. But Wafra's Counterclaims—which Wafra was *required* to assert in response to Leary's Complaint under Federal Rule of Civil Procedure 13(a)(1)—do not come close to the sort of baseless allegations that warrant dismissal of a counterclaim on that basis. Just as with his Complaint, Leary is attempting to assign nefarious motive where none exists. That Wafra's Counterclaims allege that Leary was intoxicated at work is simply a product of the fact that Leary was, in fact, intoxicated at work on multiple occasions, and that his inappropriate and unprofessional behavior caused damage to Wafra's business. Wafra is entitled to assert its rights and provide the Court with a full picture of the circumstances leading up to Leary's termination.

For these reasons and others set forth below, Wafra respectfully submits that Leary's Motion to Dismiss Wafra's Counterclaims should be denied.

## FACTUAL ALLEGATIONS

The factual allegations in support of Wafra's Counterclaims, which are assumed to be true for purposes of his Motion, are summarized briefly below.

In February 1999, Leary began working at Wafra as an at-will employee. In December 1998, he signed an offer of employment stating that his appointment as Head of Wafra's Securities Division was subject to his signed acknowledgment of, and express agreement to abide by, the terms and conditions of Wafra's Employee Handbook. (ACC ¶¶ 1–3; *see* Ex. 1.) Leary thereafter signed multiple acknowledgment forms stating that he reviewed, accepted, and agreed to comply with the terms and conditions of Wafra's Employee Handbook, and that he understood that his non-compliance with those terms could result in disciplinary action up to and including termination. (*Id.* ¶¶ 4–6, 10; *see* Ex. 2; *see also* Exs. 3–5.)

At all times during Leary's employment, Wafra's Employee Handbook expressly prohibited, among other forms of misconduct, personal use of Wafra's time, resources, and information systems, including for personal gain; sending or posting confidential Wafra business information outside of the organization; and working under the influence of alcohol, either on Wafra's premises or while conducting business-related activities off premises. (ACC ¶¶ 9, 11.) Wafra's Employee Handbook expressly stated that an employee's violation of any of its terms could result in disciplinary action, up to and including termination. (*Id.* ¶ 10.)

During the period between 2014 and 2018, multiple Wafra employees observed Leary consume alcoholic beverages during the workday, including at business-related lunches and other work events. (*Id.* ¶ 14.) Wafra employees also observed Leary exhibit inappropriate behavior consistent with intoxication. For example, multiple Wafra employees observed Leary

slur his words and make hostile, aggressive threats towards colleagues at a 2016 Securities Division meeting in Wafra's offices. Wafra employees witnessed Leary exhibit similar behavior during a conference call in 2017, when he smelled of alcohol and made inappropriate physical contact with another employee. (*Id.* ¶¶ 15–18.) This pattern of behavior coincided with and contributed to a decline in Leary's work performance and the loss of several important client accounts, which contributed to the unprofitability of Wafra's Securities Division. (*Id.* ¶ 23.)

On August 25, 2017, Wafra's Head of Human Resources observed Leary exhibiting similar behavior, after Leary had consumed multiple alcoholic beverages during a business lunch with a colleague, and asked him to leave work early. (*Id.* ¶ 21.) Leary subsequently was terminated for cause on August 29, 2017. (*Id.* ¶ 24.) Contrary to the allegations in the Complaint, Wafra provided Leary with two legitimate, non-discriminatory business reasons for his termination: (i) his continued poor performance, which long pre-dated his alleged disability and his FMLA leave, and (ii) his inappropriate and unprofessional behavior at work as a result of being intoxicated, a clear violation of Wafra's workplace policies and standards of professional conduct as codified in its Employee Handbook. (*Id.*)

Additionally, review of Wafra's information systems has revealed that in the four years preceding his termination, Leary sent dozens of emails containing Wafra's confidential business information, including proprietary fund and investment strategy, by blind copy, or bcc, to his Gmail account for personal use. (ACC ¶¶ 13, 29.) Although Wafra was not aware of the extent of that behavior in August 2017, and therefore it was not grounds for Leary's termination, there can be no dispute that it is a violation of Wafra's information systems policy as codified in its Employee Handbook. (*Id.* ¶ 29; *see* Ex. 6 at 46–48.) And there is no possible business

justification for Leary doing so, given that he was provided with a work laptop and remote access to Wafra's information systems at all times during his employment.

Based on these factual allegations, Wafra asserts two counterclaims: (1) breach of contract; and (2) breach of fiduciary duties. (ACC ¶¶ 25–36.)

## LEGAL STANDARD

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *UPS Store, Inc.* v. *Hagan*, 99 F. Supp. 3d 426, 434 (S.D.N.Y. 2015). To survive a motion to dismiss, a counterclaim need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). A counterclaim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the [counterclaim-]defendant is liable for the misconduct alleged." *Id.* While a counterclaimant need not establish a probability of success on the merits, it must demonstrate "more than a sheer possibility that a [counterclaim-]defendant has acted unlawfully." *Id.* The factual allegations in the counterclaim must be taken as true, and all reasonable inferences must be drawn in the counterclaimant's favor. *See Anthem, Inc.* v. *Express Scripts, Inc.*, No. 16 Civ. 2048, 2017 WL 1134765, at *3 (S.D.N.Y. Mar. 23, 2017) (citing *Goldstein* v. *Pataki*, 516 F.3d 50, 53 (2d Cir. 2008)).

## ARGUMENT

**I.   WAFRA ADEQUATELY PLEADS A COUNTERCLAIM FOR BREACH OF CONTRACT.**

In order to state a viable counterclaim for breach of contract under New York law, Wafra need only allege (1) the existence of a contract, (2) adequate performance of the contract by counterclaim-plaintiff, (3) breach of the contract by counterclaim-defendant, and (4) damages.

*See Eternity Glob. Master Fund Ltd.* v. *Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004); *Harsco Corp.* v. *Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Wafra alleges facts in support of each of those elements. Nevertheless, Leary submits that Wafra has failed to state a breach of contract claim because Wafra's Employee Handbook is not a valid contract, Wafra does not allege the specific Handbook provisions that Leary breached, and Wafra fails to allege how Leary's breaches caused it to suffer damages. Leary also seeks dismissal of Wafra's breach of contract claim on the ground that it is duplicative of its breach of fiduciary duty claim. None of those arguments have merit.

A. **Wafra's Employee Handbook Is A Valid and Enforceable Contract Between Wafra and Leary.**

Leary does not dispute that, over the course of his employment, he signed multiple acknowledgments in which he expressly agreed to abide by the terms of Wafra's Employee Handbook as a condition of his employment. Nor does he dispute that Wafra has pleaded facts alleging that he breached the terms of Wafra's Employee Handbook. Instead, Leary argues that Wafra's breach of contract claim must be dismissed because the Employee Handbook is not a valid contract between Wafra and Leary. (Mot. at 6–7.)

That argument misstates the law in New York. New York courts repeatedly have recognized that an employee handbook constitutes a valid contract between employer and employee where the employee expressly agrees to comply with its terms. *See, e.g.*, *Apple Mortg. Corp.* v. *Barenblatt*, 162 F. Supp. 3d 270, 277, 285 (S.D.N.Y. 2016); *Pinsky* v. *JP Morgan Chase & Co.*, 576 F. Supp. 2d 559, 563 (S.D.N.Y. 2008); *Currier, McCabe & Assocs., Inc.* v. *Maher*, 75 A.D.3d 889, 891–92 (3d Dep't 2010); *Evans* v. *Ithaca Urban Renewal Agency*, 205 A.D.2d 844, 846 (3d Dep't 1994). In fact, the New York Supreme Court recently held that an employee's violation of the terms of an employee handbook gave rise to a viable breach of

contract claim because the employee expressly agreed to comply with the handbook's terms and that such compliance was a condition of his employment. *See Pozner* v. *Fox Broad. Co.*, 59 Misc. 3d 897, 900 (N.Y. Sup. 2018) ("Pozner 'agree[d] to abide by [the Standards] at all times during [his] employment by [Fox]'. . . . In addition, his employment also was expressly 'subject to [Fox's] policies contained in 'Fox Facts[.]'") (alterations in original).

Contrary to Leary's assertions, New York courts have refused to recognize employee handbooks as valid contracts only where the handbook expressly states that it is *not* a contract of any kind or that its policies are otherwise non-binding on employees. *See, e.g.*, *Baron* v. *Port Auth. of N.Y. & N.J.*, 271 F.3d 81, 86 (2d Cir. 2001) (finding, where handbook "plainly convey[ed] the [employer's] intention that the provisions in the Guidebook and [policies] are non-binding," that "[n]o understanding by the plaintiffs to the contrary would have been objectively reasonable"); *Sharkey* v. *J.P. Morgan Chase & Co.*, No. 10 Civ. 3824, 2011 WL 135026, at *9 (S.D.N.Y. Jan. 14, 2011) (dismissing breach of contract claim based on employee handbook's general disclaimer that it "prevents the creation of a contract").

Here, Leary's signed acknowledgments clearly state that the terms of Wafra's Employee Handbook are binding on Wafra employees. (*See* Ex. 2.) Leary's signed acknowledgments also make clear that he expressly agreed to abide by the terms of the Handbook and acknowledged that his failure to do so could result in disciplinary action up to and including termination. (*See* Ex. 2.) And Leary's offer of employment, which he also signed, stated that compliance with the terms of the Handbook was a condition of his employment. (*See* Ex. 1, at 2 ("Your appointment is subject to your acceptance of the terms and conditions contained in the enclosed employee handbook . . . . You must acknowledge in writing your

having read and understood all the terms and conditions contained therein prior to employment.").)  The Handbook therefore constitutes a valid contract under New York law.

Leary does not even mention, let alone distinguish, the above precedent.  Instead, his argument for dismissal relies solely on his misinterpretation of a "disclaimer" in Wafra's Handbook that provides that it "should not be construed as, and does not constitute, a contract *of employment*, either express or implied, or *a guarantee of employment for any specific duration*." (Mot. at 6 & Ex. 1 (emphasis added); *see also* Ex. 7 at 4 (stating Wafra's Handbook "is not a contract, express or implied, *guaranteeing employment for any specific duration*.") (emphasis added).)  But unlike the general disclaimers at issue in *Baron* and *Sharkey*, that limited disclaimer provides only that the Employee Handbook is not an *employment* contract—*i.e.*, a contract that provides for a finite, guaranteed term of employment.  Wafra does not allege otherwise.[1]  Rather, Wafra alleges that the terms of its Employee Handbook were binding on its employees, that Leary expressly agreed to abide by those terms as a condition of his at-will employment, that he breached those terms by engaging in the behavior alleged at paragraphs 12–23 of its Counterclaims, and that Wafra suffered damages as a result.  Those allegations are sufficient to state a claim for breach of contract under New York law.

---

[1]  As a result, the cases Leary cites at page 6 of his Motion—all of which addressed employee handbooks containing *general* disclaimers stating that the handbooks do not constitute contracts *of any kind*—are inapposite.  *See CMG Holdings Grp.* v. *Wagner*, No. 15 Civ. 5814 (JPO), 2016 WL 4688865, at *9 (S.D.N.Y. Sept. 7, 2016) (finding that there could be no claim for breach of contract based on employee handbook that stated "[t]hese policies are not a legal document"); *Gregory* v. *Stewart's Shops Corp.*, No. 14 Civ. 00033, 2017 WL 4326518, at *3–4 (N.D.N.Y. Sept. 28, 2017) (holding that "[t]he fact that Stewart's policy to pay employees for 20-minute meal breaks appears in the Personnel Manual does not create a binding contract to pay employees for breaks not taken" because the Manual contained an "explicit disclaimer of any contractual relationship"); *Rozenzweig* v. *ClaimFox, Inc.*, 251 F. Supp. 3d 449, 457–58 (E.D.N.Y. 2017) ("Where a manual or policy statement contains a disclaimer that nothing in the manual is intended to create a contract, an employee cannot bring a breach of contract claim based on the manual or policy statement." (quoting *Sharkey*, 2011 WL 135026, at *9)).

## B. Wafra Adequately Alleges that Leary Breached Specific, Material Terms of Its Employee Handbook.

Leary also seeks dismissal of Wafra's breach of contract claim on the ground that Wafra has not "set forth specifically the material terms [of its Employee Handbook] that were allegedly violated." (Mot. at 7.) That argument completely ignores paragraphs 9 and 11 of the Counterclaims, which specifically allege that Wafra's Handbook "expressly prohibited Wafra employees from, among other things, working under the influence of alcohol, either on Wafra's premises or while conducting business-related activities off-premises" and from "using the organization's time and resources for personal gain and sending or posting confidential material outside of the organization." (ACC ¶¶ 9, 11.) Those allegations quote directly from the sections of Wafra's Employee Handbook on Drug and Alcohol Use and Internet Usage. (*See* Ex. 7 at 26, 31; *see also* Ex. 6 at 46–47, 54–55.) Leary received and reviewed copies of Wafra's Handbook when he was employed there and Wafra has produced the relevant version of its Handbook in this litigation. There can be no confusion as to which policies Wafra's Counterclaims refer.[2]

If Leary's argument is that Wafra's breach of contract allegations are "conclusory" (Mot. at 7) merely because Wafra failed to cite to particular Handbook pages or provision numbers, that argument does not warrant dismissal of the Counterclaims. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only that Wafra plead a "short and plain statement of the claim showing that [it] is entitled to relief"—a standard that "does not require 'detailed factual allegations,' but [simply] demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Wafra's Counterclaims plainly meet this standard. In any event, as

---

[2]    *Contra Mumin* v. *Uber Techs.*, 239 F. Supp. 3d 507, 536–37 (S.D.N.Y. 2017) (dismissing contract claim where plaintiff "fail[ed] to point" to provisions in the relevant agreement that defendant allegedly breached).

Leary well knows, Wafra's Employee Handbook does not contain numbered or lettered sections or provisions, and thus Wafra's allegations are pleaded with the same level of specificity as exists in the Handbook itself.  (*See* Exs. 6, 7.)

### C.  Wafra Adequately Pleads Damages Suffered As A Result of Leary's Breach of Contract.

Leary submits that Wafra's breach of contract claim should be dismissed for the additional reason that Wafra "does not allege how it was damaged" by Leary's violations of the Employee Handbook.  (Mot. at 7–8.)  But Wafra is not required to plead *how* it was damaged by Leary's conduct.  *See Xpedior Creditor Trust* v. *Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004) ("Under Rule 8(a), [plaintiff] need only allege *that* it was damaged; it is not required to specify the measure of damages nor to plead proof of causation.") (emphasis added); *see also In re Initial Public Offering Sec. Litig.,* 241 F. Supp. 2d 281, 351 n.80 (S.D.N.Y. 2003) ("While such Plaintiffs may indeed be unable to *prove* damages, that is not an appropriate question at this stage.") (emphasis added).  Wafra alleges that it suffered damages including, but not limited to, "lost profits, lost business opportunities, and reputational harm," and it connects those damages to Leary's conduct by alleging that Leary's conduct contributed to declining performance in his clients' securities portfolios, which caused Wafra's Securities Division to become unprofitable.  (ACC ¶¶ 23, 28.)  Those allegations are sufficient under the law.  Courts have upheld breach of contract claims premised on similar, and indeed far less detailed, damages allegations.  *See, e.g.*, *LivePerson, Inc.* v. *24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 516 (S.D.N.Y. 2015) (denying motion to dismiss breach of contract claim because "Plaintiff . . . stated that damage exceeded $75,000 and impacted numerous client relationships, allegations that provide Defendant with adequate notice of the breach of contract claim"); *Russo* v. *United Recovery Sys., LP*, No. 14 Civ. 851 (RJD) (VVP), 2014 WL 7140498, at *3 (E.D.N.Y.

Dec. 12, 2014) (denying motion to dismiss breach of contract claim because plaintiff Russo alleged that he "incurred debt settlement and legal fees" as a result of the breach and "at this stage, Russo need only allege that [he] was damaged; [he] is not required to specify the measure of damages nor plead proof of causation.") (alteration in original) (internal quotation marks omitted); *Xpedior*, 341 F. Supp. 2d at 272 n.83 (upholding breach of contract claim alleging only that "Plaintiff and other members of the Class have been damaged by [Defendant's] breaches of contract in an amount to be proven at trial"); *see also N. Shipping Funds I, LLC* v. *Icon Capital Corp.*, No. 12 Civ. 3584 (JCF), 2013 WL 1500333, at *9 (S.D.N.Y. Apr. 12, 2013) ("At this point in the proceedings, drawing all reasonable inferences in Icon's favor, Icon presents sufficient facts to suggest damages stemming from the alleged breach of the confidentiality provision, and 'it [is] unnecessary at this stage to address whether . . . a claim for damages for breach of a contract . . . is too speculative to survive.'") (alterations in original) (quoting *Sharp* v. *Patterson*, No. 03 Civ. 8772 (GEL), 2004 WL 2480426, at *6 (S.D.N.Y. Nov. 3, 2004)); *USAirways Group, Inc.* v. *British Airways PLC*, 989 F. Supp. 482, 492 (S.D.N.Y. 1997) ("Although the allegations of damages are short on specifics and [plaintiff] may ultimately have difficulty establishing the amount of damages caused by the alleged breach, such allegations are sufficient to survive a motion to dismiss the complaint.").

### D. Wafra's Contract Claim Is Not Duplicative of Its Breach of Fiduciary Duty Claim.

Finally, Leary argues that Wafra's breach of contract claim should be dismissed as duplicative of its fiduciary duty claim because Wafra "alleges no different misconduct in support of its breach of contract claim." (Mot. at 8.) That argument also fails.

Generally, it is true that a "breach of fiduciary duty claim is duplicative when it is based on allegations of fiduciary wrongdoing that are [ ] expressly raised in plaintiff's breach of

contract claim." *N. Shipping Funds I, LLC* v. *Icon Capital Corp.*, 921 F. Supp. 2d 94, 105

(S.D.N.Y. 2013) (alteration in original) (internal quotation marks omitted); *see also World*

*Capital, L.P.* v. *Preferred Fragrance, Inc.*, 43 F. Supp. 3d 236, 243–44 (S.D.N.Y. 2014). Leary

does not explain why Wafra's breach of contract claim is duplicative of the breach of duty claim,

and not vice-versa. In any event, neither claim is duplicative because "the same conduct

constituting the breach of a contractual obligation may also constitute the breach of a duty

arising out of the relationship created by the contract but independent of the contract itself," so

long as the fiduciary duty "spring[s] from circumstances extraneous to, and not constituting

elements of, the contract, although it may be connected with and dependent upon the

contract." *La Barte* v. *Seneca Resources Corp.*, 285 A.D.2d 974, 976–77 (4th Dep't 2001); *see*

*also Consolidated Risk Servs., Inc.* v. *Auto. Dealers WC Self Ins. Trust*, No. 06 Civ. 871

(FJS/RFT), 2007 WL 951565, at *2 (N.D.N.Y. Mar. 27, 2007) ("[I]n a case where the plaintiff

sufficiently pleads a duty beyond the scope of a contract, he can also maintain other tort

claims."); *Sergeants Benevolent Assoc. Annuity Fund* v. *Renck*, 19 A.D.3d 107, 111 (1st Dep't

2005) (reversing lower court's dismissal of a tort claim as duplicative of a breach of contract

claim because plaintiffs alleged "a [fiduciary] duty on the part of the [defendants] beyond the

scope of the agreement"). Here, Wafra alleges that Leary breached fiduciary duties that he owed

to Wafra by virtue of his senior position at the Company, and therefore those duties are

independent of the obligations Leary owed to Wafra under the Employee Handbook. (ACC ¶¶

26, 29.)

        Wafra's Counterclaims are not duplicative for the additional, independent reason

that Wafra seeks distinct remedies for its breach of contract and breach of duty claims. *See N.*

*Shipping*, 921 F. Supp. 2d at 106 (claims are duplicative where "[b]oth claims are premised upon

the same facts *and seek the same damages for the alleged conduct*") (emphasis added).  Leary

himself acknowledges this exception to the general rule.  (*See* Mot. at 8 (citing *Chowaiki & Co.

Fine Art* v. *Lacher*, 982 N.Y.S.2d 474, 475 (1st Dep't 2014)) ("[the] motion court properly

dismissed plaintiffs' claim for breach of fiduciary duty as duplicative of the breach of contract

claim, since the claims are premised upon the same facts *and seek identical damages*.")

(emphasis added).)  Under the faithless servant theory of breach of fiduciary duty, Wafra seeks

disgorgement of Leary's salary earned during the period of breach—not the dollar amount

equivalent to the lost profits, lost business opportunities, and reputational harm that it suffered as

a result of Leary's breach of contract.  (ACC ¶¶ 29–30.)  So long as Wafra does not ultimately

obtain duplicative damages awards for the same conduct, it is entitled to pursue alternative

theories of recovery at the pleading stage.  *See U.S. Network Servs., Inc.* v. *Frontier Commc'ns

of West, Inc.*, 115 F. Supp. 2d 353, 358 (W.D.N.Y. 2000) ("Although plaintiff clearly cannot

obtain duplicative damage awards, I see no basis to force plaintiff to elect one theory of recovery

over the other at this time.").

## II.     WAFRA ADEQUATELY PLEADS A COUNTERCLAIM FOR BREACH OF
##         FIDUCIARY DUTY.

Leary seeks dismissal of Wafra's breach of fiduciary duty counterclaim on two

grounds: first, that Wafra fails to allege actionable misconduct in support of that claim, and

second, that Wafra fails to adequately plead damages.  (Mot. at 9–12.)  Neither of these

arguments, which are limited to Wafra's claim for breach of the duty of loyalty, is successful.

### A.     Wafra Alleges Actionable Misconduct in Support
###        of Its Claim for Breach of the Duty of Loyalty.

Leary does not dispute that he owed Wafra fiduciary duties, including duties of

loyalty, fidelity, and good faith, as a result of his employment as Head of Wafra's Securities

Division.  Instead, Leary argues that the alleged conduct fails to support an actionable claim for

breach of the duty of loyalty because it did not "constitute[] a usurpation of corporate opportunities or otherwise enrich[] Leary at [Wafra's] expense." (Mot. at 9.) But that argument misses the mark in at least three respects.

First, Wafra *does* plead actionable misconduct in support of its duty of loyalty claim. Specifically, Wafra alleges that Leary breached his duty of loyalty when he repeatedly used Wafra's information systems to covertly send Wafra's confidential and proprietary business information to his Gmail address for personal use between February 2013 and August 2017, in violation of Wafra's workplace policies. (ACC ¶¶ 13, 27, 29.) That is precisely the sort of self-interested misconduct that supports a viable claim for breach of the duty of loyalty. *See Mercer Health & Benefits LLC* v. *DiGregorio*, No. 18 Civ. 1805 (JGK), 2018 WL 1737625, at *22 (S.D.N.Y. Apr. 5, 2018) (upholding breach of loyalty claim premised on allegation that defendants "sent themselves confidential [company] information . . . with the purpose of using that information after leaving [the company]"); *In re Cross Media Mktg. Corp.*, 367 B.R. 435, 462 (Bankr. S.D.N.Y. 2007) ("[E]mployee[s] may not misappropriate and utilize confidential information, such as customer lists and other confidential information not generally known to the public, but available only to employees in their employment capacity."); *see also* Restatement (Third) of Agency § 8.05 (2006) cmt. b ("This rule [that [a]n agent who has possession of property of the principal has a duty to use it only on the principal's behalf, unless the principal consents to such use] is a specific application of an agent's basic fiduciary duty.") (internal quotation marks omitted).

Second, Leary's argument fails to address Wafra's allegation that Leary also breached his fiduciary duty of loyalty to Wafra by acting as a faithless servant. Under New York law, Wafra may state a viable claim for breach of the duty of loyalty under the "faithless servant"

doctrine by alleging that Leary engaged in misbehavior contrary to its interests while he was employed. *See Carco Grp.* v. *Maconachy*, 383 F. App'x 73, 76 (2d Cir. 2010) (under the faithless servant doctrine, "[a]n agent is obligated to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency") (internal quotation marks omitted); *Levy* v. *Young Adult Institute, Inc.*, 103 F. Supp. 3d 426, 440 (S.D.N.Y. 2015) (upholding faithless servant breach of fiduciary duty counterclaim based on general allegation that "through '[his] false statements and self-interested actions, [employee] breached his duty of loyalty and deprived [employer] of his good judgment and services.'"). Wafra alleges that Leary was faithless to Wafra by engaging in a pattern of misbehavior that adversely reflected on Wafra and was contrary to its interests, including by repeatedly becoming intoxicated during the workday, by attending business lunches and meetings while intoxicated, and by sending confidential, proprietary Wafra business information to his personal Gmail account for his own personal use. (ACC ¶¶ 13–23.) Leary does not contest the sufficiency of these allegations under the faithless servant doctrine.

Third, Leary's Motion does not even address Wafra's allegation that he breached other, non-loyalty based fiduciary duties by engaging in the alleged misconduct. (*See id*. ¶¶ 26–30) ("At all times relevant to this case, Mr. Leary owed to Wafra Inc. fiduciary duties, including the fiduciary duties of loyalty, fidelity, and good faith, arising from his employment relationship with and executive positions at Wafra."). Thus, Wafra's breach of fiduciary duty claim cannot be dismissed on the basis of Leary's Motion alone.

### B. Wafra Adequately Pleads Damages Suffered As A Result of Leary's Breach of the Duty of Loyalty.

Leary's argument that Wafra's breach of fiduciary duty claim should be dismissed because Wafra does not adequately plead damages fails on its face. As an initial matter, Wafra is

not required to plead damages in support of its faithless servant breach of loyalty claim.  *See Phansalkar* v. *Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) ("It does not 'make any difference that . . . the principal suffered no provable damage as a result of the breach of fidelity by the agent.'") (quoting *Feiger* v. *Iral Jewelry, Ltd.*, 363 N.E.2d 350, 351 (1977)); *Levy*, 103 F. Supp. 3d at 440 ("An employee who is found to be faithless normally forfeits all compensation received during the period of disloyalty, regardless of whether the employer suffered any damages."); *Stanley* v. *Skowron*, 989 F. Supp. 2d 356, 360 (S.D.N.Y. 2013) (same).

In any event, Wafra has adequately pleaded that it suffered damages as a result of Leary's breaches of the duty of loyalty.  Wafra alleges that Leary's repeated intoxication during the workday, including during work meetings and client calls, reflected adversely on Wafra by threatening its business relationships and contributed to Leary's declining work performance which, in turn, contributed to the declining performance of Wafra's Securities Division, and that Wafra is therefore entitled to damages in an amount to be determined at trial, in addition to disgorgement of Leary's salary during the period of Leary's faithlessness.  (ACC ¶¶ 15, 28–30.) As with its breach of contract claim, Wafra is not required to plead specific facts about the quantum of its damages or how Leary's conduct caused its damages at this stage of the litigation. Leary cites no authority to the contrary.[3]

---

[3]  Leary's cited authorities stand for the separate proposition, inapplicable to this Motion, that Wafra ultimately will be required to *prove* actual damages in order to succeed on its claim for breach of the duty of loyalty. (Mot. at 11); *see Webb* v. *Robert Lewis Rosen Assocs., Ltd.*, No. 03 Civ. 4275(HB), 2003 WL 23018792, at *6 (S.D.N.Y. Dec. 23, 2003) ("*proving* a breach of fiduciary duty requires a showing of damages") (emphasis added) *aff'd*, 128 F. App'x 793 (2d Cir. 2005); *Sanders* v. *Madison Sq. Garden, L.P.*, No. 06 Civ. 589 (GEL), 2007 WL 1933933, at *4 (S.D.N.Y. July 2, 2007) ("[While] *proving* a breach of fiduciary duty claim requires a showing of damages . . . the faithless servant doctrine[ ] provides an additional mechanism for relief, notwithstanding that [the employer] suffered no damage.") (alterations in original) (emphasis added) (quoting *Webb*, 2003 WL 23018792, at *5–6).

**III.    WAFRA'S COUNTERCLAIMS ARE NOT RETALIATORY.**

Finally, Leary argues that Wafra's Counterclaims should be dismissed, with prejudice, because they constitute "retaliation" for his bringing this lawsuit.  (Mot. at 12–13.)  That argument is wholly unfounded and should be rejected.

It is true that *baseless* counterclaims may be considered retaliatory when the counterclaim-defendant can show (1) he participated in a protected activity, (2) the counterclaim-plaintiff took an employment action disadvantaging the counterclaim-defendant, and (3) there is a causal connection between the two.  *See Delville* v. *Firmenich Inc.*, 920 F. Supp. 2d 446, 463, 465 (S.D.N.Y. 2013); *Flores* v. *Mamma Lombardis of Holbrook, Inc.*, 942 F. Supp. 2d 274, 278–79 (E.D.N.Y. 2013).

Leary does not, and cannot, make this showing.  He has not provided any basis for this Court to deem Wafra's Counterclaims "baseless," except for bald, conclusory assertions that Wafra brought them "only to embarrass and humiliate" Leary.  (Mot. at 13.)  Even if he had provided such a basis, whether Wafra's Counterclaims are sufficiently meritorious to overcome a retaliation claim is a "factual issue[] that [is] inappropriate for a court to resolve on a motion to dismiss."  *Werman* v. *Excel Dentstry, P.C.*, No. 13 Civ. 7028 (DAB), 2014 WL 846723, at *4 (S.D.N.Y. Feb. 25, 2014) (citing *Nielsen* v. *Rabin*, 746 F.3d 58, 63 (2d Cir. 2014)).

Nor has Leary established any causal connection between his lawsuit and Wafra's Counterclaims, other than that Wafra's Counterclaims were filed in its Answer to Leary's Complaint.  (Mot. at 12–13.)  Wafra was required to assert its Counterclaims in that Answer because they are compulsory under Fed. R. Civ. P. 13(a)(1), which negates any purported retaliatory intent.  *See Torres* v. *Gristedes Operating Corp.*, 628 F. Supp. 2d 447, 475 (S.D.N.Y. 2008).  Nevertheless, Leary asks this Court to draw a negative causal inference from the fact that Wafra "took no action [on its alleged Counterclaims] until it fired Leary[.]"  (Mot. at 12.)  Of

17

course, the responsive action Wafra took *was* terminating Leary for cause in August 2017.

(ACC ¶ 24.)  Wafra did not wait for Leary to file a lawsuit six months later before doing so.

Indeed, if any claim should be deemed retaliatory, it is Leary's—not Wafra's.

## **CONCLUSION**

For the foregoing reasons, Defendant Wafra Inc. respectfully requests that the

Court deny Plaintiff's Motion to Dismiss its Amended Counterclaims.

Dated:   New York, New York
July 20, 2018

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:  /s/ Martin Flumenbaum
Martin Flumenbaum
Brette Tannenbaum
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
mflumenbaum@paulweiss.com
btannenbaum@paulweiss.com

*Counsel for Defendants Wafra Inc. (*f/k/a *Wafra Investment Advisory Group, Inc.) and Fawaz Al-Mubaraki*