UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

P. CHRISTOPHER LEARY,

                            Plaintiff,

            -against-                          Case No.: 1:18-cv-00048-LTS-HBP

WAFRA INVESTMENT ADVISORY
GROUP, INC. and FAWAZ AL-MUBARAKI,

                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT

VLADECK, RASKIN & CLARK, P.C.
Attorneys for Plaintiff
565 Fifth Avenue, 9th Floor
New York, New York 10017
(212) 403-7300

Of counsel:
    Debra L. Raskin
    Thomas Bellifemine

1019775 v3

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.    PRELIMINARY STATEMENT ..................................................................................... 1

II.   PROCEDURAL HISTORY ............................................................................................ 1

III.  INDEMNIFICATION AGREEMENT .......................................................................... 3

IV.   LEGAL STANDARD ..................................................................................................... 6

V.    PLAINTIFF'S REQUEST FOR AMENDMENT SHOULD BE GRANTED ...................... 7

      A.   The Proposed Amendment Would Not Be Futile ................................................. 7

           1.   The Counterclaims Arise by Reason of Plaintiff's Corporate Status ............................. 8

           2.   Plaintiff's Reasonable Belief as to the Alleged  Misconduct is Irrelevant to his
                Entitlement to Advancement ........................................................................ 12

           3.   Plaintiff is Entitled to Advancement for Defending Against Counterclaims ............... 14

           4.   Leary Has Also Asserted a Claim for the Fees and Costs of this Motion .................... 15

      B.   Plaintiff Acted Diligently in Requesting Amendment ....................................... 15

      C.   Amendment Will Not Cause Undue Prejudice to Wafra ................................... 16

VI.   CONCLUSION .............................................................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ...................................................................................................................7

Bernstein v. TractManager, Inc.,
    953 A.2d 1003 (Del. Ch. 2007) ...............................................................................................12

Charney v. Am. Apparel, Inc.,
    No. CV 11098-CB, 2015 WL 5313769 (Del. Ch. Sept. 11, 2015) ...........................................12

Collins v. Switzer Const. Grp., Inc.,
    69 A.D.3d 407 (1st Dep't 2010) ...............................................................................................17

Delfino v. Herald Square Mkt. Inc.,
    No. 1:17 Civ. 05407 (KHP), 2018 WL 1918629 (S.D.N.Y. 2018) ............................................6

Doe I v. Karadzic,
    176 F.R.D. 458 (S.D.N.Y.1997) ...............................................................................................17

Dore v. Sweports, Ltd.,
    No. CV 10513 (VCL), 2017 WL 415469 (Del. Ch. Jan. 31, 2017) ..........................................15

Duling v. Gristede's Operating Corp.,
    265 F.R.D. 91 (S.D.N.Y. 2010) ...............................................................................................16

Fed. Deposit Ins. Corp. v. Bank of New York Mellon,
    No. 1:15 Civ. 06560, 2019 WL 1284588 (S.D.N.Y. 2019) ........................................................7

Foman v. Davis,
    371 U.S. 178, 182 (1962) ...........................................................................................................6

In re G. Survivor Corp.,
    217 B.R. 433 (Bankr. S.D.N.Y. 1998) ......................................................................................17

Galati v. Pharmacia & Upjohn Co.,
    No. 10 Civ. 3899 (JS), 2011 WL 2470047 (E.D.N.Y. June 17, 2011) .......................................7

Homestore v. Tafeen,
    888 A.2d 204 (Del. 2005) ...............................................................................................13, 16

Learning Care Grp., Inc. v. Carlene Armetta,
    No. 3:13 Civ. 1540 (VAB), 2015 WL 4041401 (D. Conn. July 1, 2015) .................................17

Montas v. Comeq, Inc.,
  No. 04 Civ. 2603 (DRH) (MLO), 2005 WL 8160983 (E.D.N.Y. Nov. 2, 2005) ......................7

Mooney v. Echo Therapeutics, Inc.,
  No. CV 10054-VCP, 2015 WL 3413272 (Del. Ch. May 28, 2015) ..............................9, 11, 15

Paolino v. May Security International, Inc.,
  985 A.2d 392. (Del. Ch. 2009)................................................................................9, 12, 14, 16

Parneros v. Barnes & Noble, Inc.,
  18 Civ. 7834 (S.D.N.Y. May 6, 2019).........................................................................9, 10, 15

Perconti v. Thornton Oil Corp.,
  No. CIV.A. 18630-NC, 2002 WL 982419 (Del. Ch. May 3, 2002) ....................................8, 10

Pers. Touch Holding Corp. v. Glaubach,
  No. 11199-CB, 2019 WL 937180 (Del. Ch. Feb. 25, 2019)....................................................10

Peter Fabrics, Inc. v. S.S. Hermes,
  765 F.2d 306 (2d Cir. 1985)....................................................................................................16

Pickett v. Migos Touring, Inc.,
  No. 118 Civ 09775 (AT) (SDA), 2019 WL 1273602 (S.D.N.Y. Mar. 20, 2019) ......................7

Quinlan v. Curtiss-Wright Corp.,
  204 N.J. 239 (2010) ................................................................................................................13

Reddy v. Elec. Data Sys. Corp.,
  No. CIV.A. 19467, 2002 WL 1358761 (Del. Ch. June 18, 2002) ...........................................10

Scott v. Chipotle Mexican Grill, Inc.,
  300 F.R.D. 193 (S.D.N.Y. 2014) ............................................................................................16

Valentini v. Citigroup, Inc.,
  No. 11 Civ. 1355 (JMF), 2013 WL 4407065 (S.D.N.Y. Aug. 16, 2013) ..........................16, 17

Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.,
  474 Mass. 382 (2016) .............................................................................................................13

Weaver v. ZeniMax Media, Inc.,
  No. Civ. A. 20439-NC, 2004 WL 243163 (Del. Ch. Jan. 30, 2004) .......................................11

**Statutes**

Age Discrimination in Employment Act, 42 U.S.C. § 621 et seq. ..............................................2, 3

Americans with Disabilities Act, 42 U.S.C. § 1201 et seq. ..............................................................3

Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ...........................................................1, 3

Human Rights Law, N.Y.C Administrative Code § 8-101 et seq.................................................1, 3

New York State Human Rights Law, Executive Law § 296 et seq. ...........................................1, 3

**Other Authorities**

Fed. R. Civ. P. 15(a)(2)..................................................................................................................6, 7

## I.    PRELIMINARY STATEMENT

Plaintiff P. Christopher Leary ("Leary" or "plaintiff") respectfully submits this memorandum of law in support of his motion for leave to file a third amended complaint against defendants Fawaz Al-Mubaraki ("Al-Mubaraki") and WAFRA Investment Advisory Group, Inc. ("WAFRA" or the "Company") (now d/b/a WAFRA, Inc.) (collectively "defendants"). The proposed amendment seeks adjudication of plaintiff's entitlement to advancement of legal fees and costs from Wafra for defending against Wafra's counterclaims.[1] Alternatively, the proposed Amendment seeks adjudication of plaintiff's entitlement to indemnification from Wafra for defending against Wafra's counterclaims.

## II.   PROCEDURAL HISTORY

On January 3, 2018, plaintiff commenced this action alleging interference and retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), and age and disability discrimination and retaliation under the New York State Human Rights Law, Executive Law § 296 et seq. (the "State Law"); and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 et seq. (the "City Law"). (Complaint, ECF 1, January 3, 2018)

Plaintiff alleges that Al-Mubaraki and Wafra fired plaintiff after 18 years of exemplary service and falsely credited the firing to pretextual reasons – namely, plaintiff's poor performance and alleged intoxication. (See Amended Complaint, ECF 11, March 13, 2018 (hereinafter "Amend. Comp.") at ¶ 42) In reality, Wafra terminated plaintiff's employment due to his age, disability, and having taken FMLA leave. Indeed, defendants did not hide their bias. Al-Mubaraki said openly that he wanted to hire "someone late 30's or early 40's, not old like Chris."

---

[1] The proposed Third Amended Complaint is attached as Exhibit 1 to the Declaration of Debra L. Raskin (hereinafter "Raskin Dec.")

(See id. at ¶ 23) He likewise told Leary that he thought Leary was too old for his job. (See id. at ¶ 34)

On March 13, 2018, plaintiff amended his initial complaint, on consent, to add claims of age discrimination and retaliation under the Age Discrimination in Employment Act, 42 U.S.C. § 621 et seq. ("ADEA") after the 60-day ADEA administrative exhaustion period at the Equal Employment Opportunity Commission ("EEOC") had run. (See Amend. Comp.) On June 8, 2018, defendants filed their Answer to the Amended Complaint with Amended Counterclaims. (See ECF 24, June 8, 2018 (hereinafter "counterclaims")) The counterclaims, on behalf of Wafra exclusively, allege that "repeated violations of the rules of conduct codified in Wafra's employee handbook" caused "Leary [to] breach[] his fiduciary duties to . . . Wafra," (id. at ¶ 27) and "the terms and conditions of [his] employment with Wafra." (Id. at ¶ 32)

Wafra contends that Leary violated the terms of Wafra's employee handbook "[b]y working under the influence of alcohol and conducting business while intoxicated," (id. at ¶ 34) and "[b]y using his Wafra email account to send personal emails and to forward confidential, proprietary information to his personal email account." (Id. at ¶ 35) For instance, Wafra claims that Leary appeared intoxicated after "consum[ing] multiple alcoholic beverages while at lunch with a colleague during the workday" on August 25, 2017. (Id. at ¶ 20)

As plaintiff has shown, these claims are frivolous. (See Memorandum of Law in Support of Plaintiff's Motion to Dismiss Defendants' Amended Counterclaims, ECF No. 26, June 22, 2018) They also are part of Wafra's discriminatory and retaliatory treatment of Leary that did not cease with his firing. (See Amend. Comp. ¶¶ 22-36)

In fact, beginning in July 2014, Leary sent Wafra emails to his personal account because, following the discriminatory comments described above, he anticipated that Wafra might

2

terminate his employment on such discriminatory grounds.[2] The emails capture discriminatory remarks, review Leary's performance, reflect a reduction in Leary's responsibilities, and record negative interactions between Leary and Al-Mubaraki.[3] For example, one email from July 1, 2014 records Al-Mubaraki's comment that he "wanted someone [for a position] late 30's or early 40's, not old like [Leary]."[4] Another email from July 8, 2014 records Al-Mubaraki's excluding only Leary from a department-wide meeting.[5] Leary had previously sent Wafra emails to his personal account on occasion for the sake of more easily accessing business information when working from home.[6]

After exhausting the longer EEOC administrative proceedings for the Americans with Disabilities Act, 42 U.S.C. § 1201 et seq. ("ADA") claims, plaintiff filed a Second Amended Complaint on August 31, 2018 that added ADA claims of discrimination and retaliation. (See Plaintiff's Motion for Leave to File a Second Amended Complaint, ECF 34, August 31, 2018) Plaintiff also sought to add claims of retaliation, not on consent, under the ADEA, ADA, State Law, and City Law in response to Wafra's meritless counterclaims. See id. That motion is pending.

III.     INDEMNIFICATION AGREEMENT

On January 3, 2016, Wafra entered into an Indemnification Agreement ("Agreement") "for the benefit of" Leary.[7] The Agreement obligates Wafra "to indemnify, and to

---

[2] See Declaration of P. Christopher Leary (hereafter "Leary Dec.") at ¶ ¶ 2, 3.

[3] See id. at ¶ 3.

[4] See id. at ¶ 5.

[5] See id. at ¶ 6.

[6] See id. at ¶ 2.

[7] See Ex. 1 to Leary Dec. (hereafter, "Agreement") at Agreement Introduction.

advance expenses on behalf of, its directors and officers to the fullest extent permitted by applicable law" and states that "[i]ndemnitee shall be entitled to the rights of indemnification . . . if, by reason of his Corporate Status . . ., the Indemnitee is . . . a party to or participant in any Proceeding bought by or in the right of the Company."[8] The Agreement outlines an extensive process that the Company must follow to determine the Indemnitee's request for indemnification.[9] The Agreement also states: "Notwithstanding any other provision of this Agreement, the Company shall advance all Expenses incurred or to be incurred by or on behalf of Indemnitee in connection with any Proceeding by reason of Indemnitee's Corporate Status within twenty (20) days after receipt of a statement . . . from Indemnitee requesting such advance . . . whether prior to or after final disposition of such Proceeding."[10]

While Wafra had provided plaintiff with a copy of the Agreement during plaintiff's employment, plaintiff had not kept the copy and had forgotten its existence until reminded by Wafra's production.[11] As of January 10, 2019, defendants' last production, Wafra had produced

---

[8] Id. at § 1(b).

[9] See id. at §§ 5, 6. Upon receiving a written request for advancement or indemnification, the Wafra Board must vote on the method to consider the request. There are three possible methods: majority vote by disinterested directors; by a committee of disinterested directors; or, if no disinterested directors exist or disinterested directors so direct, by independent legal counsel in written opinion to the Board. If it selects the third option (independent legal counsel), the Board must send written notice of counsel selection to Indemnitee. The Indemnitee has the option of making written objections to the selection within ten days of receiving the letter. If the Board substantiates the Indemnitee's objection to the selection, either side may petition the Court of Chancery of Delaware either to resolve the objection or else to select a person to act as independent counsel. Id. at § 6.

[10] Id. at § 5.

[11] See Leary Dec. at §§ 10, 11.

4

around 2,114,564 pages in total.[12] On or around January 29, 2019, in the course of reviewing those documents, plaintiff discovered a copy of the Agreement.[13]

Pursuant to the Agreement, plaintiff submitted a letter of request on February 15, 2019 for Wafra to advance counsel fees and costs for defending against Wafra's counterclaims.[14] On March 5, 2019, Wafra responded by a letter both denying plaintiff's request and asserting that Leary is not entitled to indemnification.[15] By a letter dated March 15, 2019, plaintiff countered the objections in Wafra's denial.[16] On April 2, 2019, Wafra reasserted its earlier decision.[17] Wafra has yet to advance expenses to Leary even though more than 20 days have passed since Leary's February 15, 2019 request for advancement. On information and belief, Wafra also did not follow the detailed process that Section 6 of the Agreement dictates for Wafra's consideration of requests for indemnification.[18]

Litigation of Leary's claims for advancement, or, in the alternative, for indemnification is appropriate in this proceeding. Section 7(a) of the Agreement provides that such claims may be brought in certain circumstances "in any court of competent jurisdiction . . . within 180 days following the date on which Indemnitee first has the right to commence such

---

[12] See Raskin Dec. at § 8.

[13] See Leary Dec. at § 11.

[14] See Ex. 2 to Raskin Dec.

[15] See Ex. 3 to Raskin Dec.

[16] See Ex. 4 to Raskin Dec.

[17] See Ex. 5 to Raskin Dec.

[18] See Raskin Dec. at § 9.

1019775 v3

proceeding."[19] Such proceedings are authorized where, as here, "advancement of Expenses is not timely made pursuant to Section 5 of th[e] Agreement" or where Wafra makes a "determination . . . that Indemnitee is not entitled to indemnification."[20] The Agreement requires the Court to approach challenges to Wafra's indemnification determination de novo.[21] Notably, Wafra must "pay on [Indemnitee's] behalf, in advance, any and all expenses . . . actually and reasonably incurred by him in [this] judicial adjudication, regardless of whether Indemnitee ultimately is determined to be entitled to such indemnification [or] advancement of expenses."[22] Such expenses include attorneys' fees.[23]

IV.    LEGAL STANDARD

The Federal Rules of Civil Procedure provide that a party may amend his pleadings by leave of the court and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); see Foman v. Davis, 371 U.S. 178, 182 (1962). "Leave to amend should be given 'absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility.'" Delfino v. Herald Square Mkt. Inc., No. 1:17 Civ. 05407 (KHP), 2018 WL 1918629, at *2 (S.D.N.Y. Apr. 23, 2018) (quoting Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000)). Indeed, "[t]he party opposing a motion to amend typically bears the burden of establishing that the amendment should be

---

[19] See Agreement at § 7(a).

[20] See id.

[21] Id. at § 7(b).

[22] Id. at § 7(d).

[23] See id. at § 13(d).

denied." Pickett v. Migos Touring, Inc., No. 118 Civ 09775 (AT) (SDA), 2019 WL 1273602, at

*2 (S.D.N.Y. Mar. 20, 2019).

V.      PLAINTIFF'S REQUEST FOR AMENDMENT SHOULD BE GRANTED

            Plaintiff respectfully requests leave to file an amended complaint adding a claim

for advancement and indemnification for defending against Wafra's retaliatory counterclaims.

Because plaintiff has met the requirements of Rule 15, this motion should be granted.

        A.      The Proposed Amendment Would Not Be Futile

            A proposed amendment is futile where it "would not survive a motion to dismiss."

Galati v. Pharmacia & Upjohn Co., No. 10 Civ. 3899 (JS) (ARL), 2011 WL 2470047, at *3

(E.D.N.Y. June 17, 2011) (granting plaintiffs' motion to amend complaint). Claims survive

motions to dismiss "if the plaintiff has stated 'enough facts to state a claim to relief that is plausible

on its face.'" Fed. Deposit Ins. Corp. v. Bank of New York Mellon, No. 1:15 Civ. 06560, 2019

WL 1284588, at *4 (S.D.N.Y. 2019) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Delaware law governs the Agreement,[24] and the facts

alleged in the proposed amended complaint state a claim under Delaware law.

            The allegations demonstrate that the Agreement obligates Wafra to advance and

indemnify Leary's expenses for defending against Wafra's counterclaims. See Montas v. Comeq,

Inc., No. 04 Civ. 2603 (DRH) (MLO), 2005 WL 8160983, at *4 (E.D.N.Y. Nov. 2, 2005)

("Construing all evidence in Defendants' favor, the Court finds that Defendants have established

---

[24] The Agreement "shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without regard to its conflict of laws rules." (Agreement at § 19.)

that their proposed indemnification claims, if properly pled, are not futile."). In fact, under Delaware law, the counterclaims meet the specific requirements that the Agreement sets for advancement: they allege a proceeding against the plaintiff in his corporate status. Moreover, plaintiff is also entitled to indemnification because he acted in good faith and reasonably believed that his purported misconduct was not opposed to the best interests of the Company.[25]

Moreover, Delaware law entitles plaintiff to advancement and indemnification even though the retaliatory counterclaims were in response to a proceeding that Leary initiated. Accordingly, the proposed amendment would survive a motion to dismiss and the claim is far from futile.

1.    The Counterclaims Arise by Reason of Plaintiff's Corporate Status

Wafra's counterclaims allege actions that arise from plaintiff's corporate status and powers, and thus are entitled to advancement and subject to indemnification.

Section 13(a) of the Agreement, which covers directors and officers, defines Corporate Status as "the status of a person who is or was a director [or] officer . . . of the Company. . . ." The fact that Wafra afforded Leary the Agreement in the first place as well as his executive vice president title and supervisory duties prove him to have the relevant status. Indeed, Leary supervised a department of approximately a dozen investment professionals.[26]

Advancement for an officer or director is mandated if the individual perpetrated the alleged wrongdoing by using "the corporate powers . . . conferred upon the officer by virtue of his

---

[25] See id. at § 1(b) (entitling Indemnitee to indemnification "if, by reason of his Corporate Status . . ., the Indemnitee is . . . a party to or participant in any Proceeding bought by or in the right of the Company," and the Indemnitee has "acted in good faith and in a manner the Indemnitee reasonably believed to be in or not opposed to the best interests of the Company.").

[26] See Leary Dec. at § 4.

status." Perconti v. Thornton Oil Corp., No. CIV.A. 18630-NC, 2002 WL 982419, at *7 (Del. Ch.

May 3, 2002); id. at *6 (determining that plaintiff was entitled to indemnification when "his status

as officer . . . enabled him to embezzle (or to cause another to embezzle for his benefit) or to

transfer the corporate funds for his benefit [and,] [c]learly, he could not have made the excessive

investments in the commodities market . . . without the authority arising from his executive

position."). As this Court recently stated in requiring advancement of fees and costs for an

executive's defense of counterclaims brought by his former employer:

> [The employer's] bylaws entitle [the former executive] to advanced
> fees for defending against claims brought against him by reason of
> the fact that he was a director or an officer. . . . A claim is brought
> against an individual "by reason of his or her official capacity if
> there is a nexus or causal connection between the claim and one's
> official capacity without regard to one's motivation for engaging in
> that conduct." Paolino v. May Security International, Inc., 985 A.2d
> 392, 406. (Del. Ch. 2009). "The requisite connection is established
> if the corporate powers were used or necessary for the commission
> of the alleged misconduct." Id. Moreover, "in advancement cases the
> line between being sued and one's personal capacity and one's
> corporate capacity generally is drawn in favor of advancement, with
> disputes as to the ultimate entitlement to retain the advanced funds
> being resolved later at the indemnification stage." Mooney [v. Echo
> Therapeutics, Inc., No. CV 10054-VCP], 2015 WL 3413272 at *7
> [(Del. Ch. May 28, 2015)]. Thus, courts generally find in favor of
> advancement where a dispute exists over whether a claim involves
> one's personal or official capacity. See id. at *8; see also Paolino,
> 985 A.2d at 407, stating that an employer can avoid advancement
> for defense of a claim involving a violation of a contractual
> obligation only when the claim "clearly" involves "a specific and
> limited contractual obligation without any nexus or causal
> connection to official duties."

Parneros v. Barnes & Noble, Inc., 18 Civ. 7834 (S.D.N.Y. May 6, 2019) (Ex. 6 to Raskin Dec. at

16-17).

Here, plaintiff forwarded emails to himself containing high-level information, such

as communications with Wafra's Chief Executive Officer ("CEO") Al-Mubaraki and electronic

9

documents that Leary possessed only due to his corporate status.[27] See Perconti 2002 WL 982419, at *5 (recognizing "access to inside information" as "attribute of [plaintiff's] corporate status."); Pers. Touch Holding Corp. v. Glaubach, No. 11199-CB, 2019 WL 937180, at *15 n.204 (Del. Ch. Feb. 25, 2019) (recognizing that defendant acted in his corporate capacity by sending an email "using his corporate email address that focuse[d] on potential uses for . . . property that would benefit the Company.").

The counterclaims' false allegations concerning Leary's alcohol consumption similarly allege misconduct that involved Leary's executive status. Indeed, Leary's purported drinking occurred as he was in the course of exercising "authority arising from his executive position." Perconti, 2002 WL 982419, at *6. Wafra claims that plaintiff, who served as head of Wafra's Securities Division, "conducted business while intoxicated." (Counterclaims at ¶ 34) Leary supposedly "consume[d] alcoholic beverages during the workday, including at business lunches with Wafra employees and clients." (Id. at ¶ 11) The counterclaims also state that Leary appeared intoxicated when "attend[ing] a meeting with other members of the Securities Division at Wafra's office," (id. at ¶ 13), and again when "attend[ing] a conference call with other Wafra employees at Wafra's office." (Id. at ¶ 14); see Parneros, Raskin Dec. Ex. 6 at 17-18 (finding advancement warranted for acts taken in plaintiff's corporate capacity where "alleged bullying . . . took place at an executive meeting which [plaintiff] presumably attended because of his position as CEO"); Reddy v. Elec. Data Sys. Corp., No. CIV.A. 19467, 2002 WL 1358761, at *6 (Del. Ch. June 18, 2002) (awarding advancement to defend claims because "all of the misconduct alleged by [plaintiff's employer] involves actions [plaintiff] took on the job in the course of performing his day-to-day managerial duties.").

---

[27] See Leary Dec. at ¶ 4.

10

Weaver v. ZeniMax Media, Inc., No. Civ. A. 20439-NC, 2004 WL 243163 (Del. Ch. Jan. 30, 2004), which Wafra cited in its April 2, 2019 letter denying advancement and indemnification, supports Leary's contention. In Weaver, the indemnification agreement – like the Agreement here – covered actions by reason of the indemnitee's status as "an officer or director." Weaver, 2004 WL 243163, at 2. The parties in Weaver agreed on advancement for plaintiff's defending against a counterclaim for "breach[ing] his fiduciary duties . . . by failing to manage properly the research and development projects for which he was responsible and by making repeated misrepresentations about the projects to [his employer's] management." Id. at 1. This counterclaim was "fairly read as arising out of [the plaintiff's] 'entrusted corporate powers.'" Id. at 4. The Court then held that the plaintiff was entitled to full indemnification for that defense rather than just the 25% reimbursement that the former employer suggested. See id. at 5.

Wafra's April 2, 2019 letter misleadingly mentions only that the Weaver court denied advancement for the plaintiff's defending against claims that he took "too much vacation time and submit[ted] fraudulent travel expenses." Id. at 5. Advancement was denied because claiming benefits to which he was not entitled "did not need to make use of any 'entrusted corporate powers.'" Id. at 3. Wafra, however, alleges misconduct inseparable from Leary's business activities as a corporate executive: sending emails that he could access because of that status and being intoxicated while conducting corporate business. Moreover, more recent Delaware authority has specified that since Weaver, "Delaware courts generally have eschewed attempting to resolve disputes over whether claims relate to a potential indemnitee's personal or official capacity at the advancement stage unless the answer can be discerned swiftly, accurately, and consistent with the summary nature of an advancement proceeding." Mooney, 2015 WL 3413272, at *8.

11

Wafra also cites Charney v. Am. Apparel, Inc., No. CV 11098-CB, 2015 WL 5313769, at *15 (Del. Ch. Sept. 11, 2015), which is similarly inapposite, in its April 2, 2019 letter. In Charney, the executive's "alleged actions . . . occurred after [he] had been suspended as an . . . officer and after he had resigned as a[] . . . director." (April 2, 2019 letter) Accordingly, that purported misconduct could not be "causally connected to the use or misuse of [his] corporate power as a director or officer." Id. In contrast, Leary served as an executive vice president at the time his alleged misconduct purportedly affected his performance.[28]

> 2. Plaintiff's Reasonable Belief as to the Alleged
> Misconduct is Irrelevant to his Entitlement to Advancement

Wafra relies (Raskin Dec. Ex. 5) on the Agreement's provision that the Indemnitee must have "acted in good faith and in a manner the Indemnitee reasonably believed to be in or not opposed to the best interests of the Company."[29] Yet Section 5 states that advancement must be provided in any proceeding by reason of the indemnitee's corporate status "[n]otwithstanding any other provision of this Agreement." The Agreement thus disclaims any reasonable belief requirement as to advancement.

This differential treatment mirrors Delaware law that:

> indemnification and advancement are 'legally quite distinct' . . . It is generally premature to consider indemnification prior to the final disposition of the underlying action. . . . [I]f the covered person succeeds on the merits or otherwise in defending the underlying proceeding, then he will have a right to mandatory indemnification under Section 145(c) without the need for state of mind determinations to be made.

---

[28] Similarly, in Bernstein v. TractManager, Inc., 953 A.2d 1003, 1013 (Del. Ch. 2007), also cited by Wafra (Raskin Dec., Ex. 5), the court denied advancement "because [plaintiff] seeks advancement for claims premised on acts taken before he became a director."

[29] Agreement at § 1(b).

Paolino, 985 A.2d at 397 (internal citations omitted); see Homestore v. Tafeen, 888 A.2d 204, 212 (Del. 2005).

Moreover, Wafra's contention that Leary must have believed that the conduct alleged in the counterclaims "opposed the best interests of the Company" (Raskin Dec., Ex. 5) is wrong. Leary reasonably believed that this purported wrongdoing did not oppose Wafra's best interests.[30]

Forwarding emails that evidence Wafra's bias did not interfere with the workings of the Company. Since it is in Wafra's interest to comply with anti-discrimination laws, it is difficult to imagine that Leary opposed the best interest of his employer by keeping proof of bias. In fact, courts have recognized that obtaining such evidence of discrimination can be a protected activity shielded from retaliation. See Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 410 (2016) ("such conduct may in certain circumstances constitute protected activity under [state law]"); Quinlan v. Curtiss-Wright Corp., 204 N.J. 239, 269, (2010) (identifying factors courts must consider "[i]n deciding whether an employee [with an equal employment claim] is privileged to take or to use documents belonging to the employer."). Moreover, Wafra does not allege that Leary used those documents for competitive or other such adverse purpose. (See Counterclaims at ¶ 35)

Likewise, Leary reasonably believed that an occasional drink over lunch on a workday, which did not affect his performance, was not opposed to the best interest of the

---

[30] See Leary Dec. at §§ 7, 8.

13

Company.[31] His conclusion was especially reasonable given that alcohol consumption by employees was not foreign to Wafra culture.[32]

3.   Plaintiff is Entitled to Advancement for Defending Against Counterclaims

Contrary to Wafra's contention,[33] the Agreement mandates advancement and indemnification with respect to counterclaims. Wafra mistakenly relies on Section 9(b) of the Agreement, which bars indemnification for "any claim made against Indemnitee . . . in connection with any Proceeding . . . initiated by Indemnitee . . . against the Company or its directors, officers, employees or other indemnitees."[34]

The Chancery Court of Delaware, interpreting language identical to Sec. 9(b), held that the employer must advance expenses for the defense of counterclaims. In Paolino, 2009 WL 4652894, the court concluded that "counterclaims, even compulsory ones, are 'separate causes of action' for purposes of [indemnification] analysis." Id. at *8. As separate causes of action, "[c]ounterclaims [are] . . . parts of the proceeding that [are] initiated by [the defendant employer]." Id. at *10. Accordingly, "the carve-out [provision] does not apply [because the plaintiff is] not seeking advancements or indemnification 'in connection with a proceeding (or part thereof) initiated by [him].'" Id.

Under Paolino, Wafra's counterclaims belong to a proceeding that Wafra – and not Leary – initiated. See Dore v. Sweports, Ltd., No. CA 10513 (VCL), 2017 WL 415469, at *22-23 (Del. Ch. Jan. 31, 2017) (requiring defendant to indemnify plaintiffs for defending against

---

[31] See Leary Dec. at § 8.

[32] See id.

[33] See Raskin Dec., Ex. 5.

[34] Agreement at § (9)(b).

14

counterclaim, which constituted a covered proceeding for indemnification purposes). Accordingly, Section 9(b) does not excuse Wafra from indemnifying Leary; see Parneros, Raskin Dec. Ex. 6 at 16.

          4.     Leary Has Also Asserted a Claim for the Fees and Costs of this Motion

The Agreement provides for advancement of "such expenses . . . which are incurred by Indemnitee in connection with any action brought . . . for indemnification . . . from the Company. . . regardless of whether Indemnitee ultimately is determined to be entitled to such indemnification."[35] Indeed, courts have repeatedly found that broad indemnification contracts such as the Agreement have entitled executives, under Delaware law, to compensation for counsel fees and other costs of securing payments pursuant to indemnification agreements. See Parneros, Raskin Dec. Ex. 6 at 9; Mooney, 2015 WL 3413272, at *12. Accordingly, Leary is also entitled to counsel fees and costs for this motion.

        B.     Plaintiff Acted Diligently in Requesting Amendment

Plaintiff has acted diligently in moving to amend his complaint. As Leary did not maintain a copy of the Agreement, he was reminded of its existence only on or around January 29, 2019 when Wafra produced the document in discovery more than three years after it was signed.[36]

The Agreement allows Indemnitees to challenge any "determination . . . that Indemnitee is not entitled to indemnification . . . within 180 days."[37] Wafra rejected plaintiff's request for indemnification on March 5, 2019. The deadline for this motion thus falls on September 1, 2019.

---

[35] Agreement at § 7(e).

[36] See Leary Dec. at §§ 10, 11.

[37] Agreement at § 7(a).

Only with the discovery of the Agreement and Wafra's denial of indemnification has it become clear that the parties cannot resolve the dispute over advancement. Accordingly, no undue delay in requesting this amendment has occurred. See Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 98 (S.D.N.Y. 2010) (allowing amendment two and a half years after case began and noting that "even vague or 'thin' reasons [for delay] are sufficient, in the absence of prejudice or bad faith").

C.     Amendment Will Not Cause Undue Prejudice to Wafra

The amendment will not unfairly prejudice Wafra. "An amendment may be prejudicial if it would (1) require the defendant to expend 'significant additional resources' to conduct discovery or would (2) 'significantly delay' the resolution of the dispute." Scott v. Chipotle Mexican Grill, Inc., 300 F.R.D. 193, 200 (S.D.N.Y. 2014) (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)).  As the Delaware Supreme Court has held: "The scope of an advancement proceeding is usually summary in nature and limited to determining the issue of entitlement in accordance with the corporation's own uniquely crafted advancement provisions." Homestore, Inc., 888 A.2d at 213 (footnote citations omitted); see Paolino, 985 A.2d at 398 (a "claim for advancement can and should proceed in summary fashion").

Moreover, the proposed claim for advancement "does not . . . expand the scope of . . . discovery because the factual predicate of the [claim] was already incorporated into Defendants' [counterclaims]." Valentini v. Citigroup, Inc., No. 11 Civ. 1355 (JMF), 2013 WL 4407065, at *9 (S.D.N.Y. Aug. 16, 2013) (identifying "no prejudice that [other party] w[ould] suffer if the Court permit[ted] this amendment."); Peter Fabrics, Inc. v. S.S. Hermes, 765 F.2d 306, 312 (2d Cir. 1985) (amendment would not cause prejudice since "[t]he evidence . . . had been

16

produced; all that was missing was evidence of the meaning of. . . the contract").[38] Plaintiff's proposed claim for advancement centers on the allegations in the counterclaims. As in Valentini, the counterclaims provide the factual predicate for the proposed amendment. Accordingly, the amendment would not expand the scope of discovery.

The proposed claim also would not delay resolution as the amendment would not require any additional discovery. Indeed, plaintiff's extensive exchanges with Wafra regarding the demand for indemnification have ensured that Wafra will have ample time to prepare any response to the proposed claim. See Collins v. Switzer Const. Grp., Inc., 69 A.D.3d 407, 408 (1st Dep't 2010) ("Switzer's claim of prejudice resulting from . . . amendment of [the other party's] answer to assert cross claims for contractual indemnification against it is belied by the fact that [the other party] demanded, on two separate occasions, a defense and indemnification under the parties' agreement.").

---

[38] See Learning Care Grp., Inc. v. Carlene Armetta, No. 3:13 Civ. 1540 (VAB), 2015 WL 4041401, at *2 (D. Conn. July 1, 2015) ("the claims arise out of the same facts as those made in the current Complaint, thus [the nonmoving party] should not need to engage in additional discovery"); In re G. Survivor Corp., 217 B.R. 433, 438 (Bankr. S.D.N.Y. 1998) ("An amendment is less likely to be prejudicial where the new cause of action arises from essentially the same facts as the existing causes of action."); Doe I v. Karadzic, 176 F.R.D. 458, 461 (S.D.N.Y.1997) ("the Second Circuit has instructed this Court to permit leave to amend, even on the eve of trial, where the new claims arise from the same set of operative facts asserted in the original complaint.").

17

VI.    <u>CONCLUSION</u>

For the foregoing reasons, plaintiff's motion for leave to file a third amended complaint should be granted.

Dated: May 29, 2019
       New York, New York

VLADECK, RASKIN & CLARK, P.C.

By:    _____

Debra L. Raskin
Thomas Bellifemine
Attorneys for Plaintiff
565 Fifth Avenue, 9th Floor
New York, New York 10017
(212) 403-7300