UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

P. CHRISTOPHER LEARY,

      Plaintiff and Counter Defendant,

  -v-                                                                       No. 18-CV-0048-LTS-HBP

FAWAZ AL-MUBARAKI and WAFRA
INVESTMENT ADVISORY GROUP, INC.,

      Defendants and Counter Claimants.

-------------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

      Plaintiff P. Christopher Leary ("Leary" or "Plaintiff") brings this action against Fawaz Al-Mubaraki ("Al-Mubaraki") and Wafra Investment Advisory Group, Inc. ("Wafra," together with Al-Mubaraki, "Defendants") pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623 <u>et</u> <u>seq.</u>, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and the New York City Human Rights Law ("NYCHRL"), N.Y. Charter & Admin. Code § 8–107. (Amended Complaint ("AC"), Docket Entry No. 11.) Plaintiff alleges that Defendants, who are his former supervisor and former employer, discriminated and retaliated against him based on his age and disability. Plaintiff also asserts claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 <u>et</u> <u>seq.</u>, for unlawful interference with the exercise of his rights under the FMLA, and discrimination and retaliation for Plaintiff's attempt to exercise those rights. Wafra has asserted counterclaims for breach of fiduciary duties and breach of contract. (Defendants' Answer to the Amended Complaint with Amended Counterclaims ("Def. Answer" or "Def. Counterclaims"), Docket

Entry No. 24.) The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

Plaintiff moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Wafra's counterclaims (Plaintiff's Motion to Dismiss Defendants' Amended Counterclaims, docket entry no. 25), and for leave to file his proposed Second Amended Complaint ("PSAC," docket entry no. 35-6) to assert claims for discrimination and retaliation under the Americans with Disabilities Act ("ADA"), ADEA, NYSHRL, and NYCHRL (Plaintiff's Motion for Leave to File a Second Amended Complaint, docket entry no. 33).

The Court has considered the parties' submissions carefully. For the following reasons, Plaintiff's motion to dismiss the counterclaims is granted in its entirety and his motion for leave to amend is granted in part and denied in part.

## BACKGROUND

The following summary is drawn from the factual allegations in the parties' relevant pleadings that are taken as true for purposes of this motion practice, and documents relied upon or incorporated by the relevant pleadings.

<u>Plaintiff's Employment Tenure, Medical Condition, and Termination</u>

Leary began working for Wafra in February 1999 as a Senior Vice President in charge of fixed income investments. (Def. Counterclaims ¶¶ 1-2.)

On February 15, 2016, Plaintiff was diagnosed with a heart condition and, after experiencing further health-related complications, Plaintiff requested and received approval for FLMA leave beginning on July 11, 2016. (AC ¶¶ 6-7.) Plaintiff alleges that, when he returned from FMLA leave on September 12, 2016, many of his duties had been reassigned to a younger, more junior co-worker. (AC ¶ 8.) In July 2017, Plaintiff's supervisor, Fawaz Al-Mubaraki,

allegedly told Plaintiff that he was "too old" for his job and that, because of his health, he should not come to the office every day.  (AC ¶ 9.)  Shortly after this conversation, Plaintiff complained to human resources about Mr. Al-Mubaraki's "discriminatory comments."  (Id.)  On August 29, 2017, Wafra terminated Plaintiff's employment, and his position was reassigned to a younger Wafra employee.  (AC ¶ 10.)  At the time he was terminated, Plaintiff held the position of "Head of Securities."  (Def. Answer ¶ 4.)

Wafra Employee Handbook

When Leary initially accepted his offer of employment, which was at-will, he "acknowledge[d] in writing . . . that he read and understood all of the terms and conditions contained in Wafra's employee handbook."  (Def. Counterclaims ¶¶ 4-5, 7.)  The employee handbook was revised on at least two occasions during Mr. Leary's employment, and he acknowledged his reading and understanding of the handbook's terms and conditions with each iteration.  (See Docket Entry Nos. 30-6 and 30-7.)  Each version of the employee handbook contained language stating that violation of any company policies and procedures may result in "disciplinary action, up to and including termination of employment."  (Declaration of Brette Tannenbaum in Support of Defendant Wafra Inc.'s Memorandum of Law in Opposition to Motion to Dismiss Amended Counterclaims ("Tannenbaum Decl.") Ex. 6, Docket Entry No. 30-6 at 5 (emphasis in original).)

Each version of Wafra's employee handbook contained a disclaimer: "this employee handbook should not be construed as, and does not constitute, a contract of employment, either express or implied," or "[t]his handbook is not a contract, express or implied."  (Tannenbaum Decl. Ex. 6, Docket Entry No. 30-6 at 5; Tannenbaum Decl. Ex. 7, Docket Entry No. 30-7 at 4.)  Each acknowledgement form Plaintiff signed also contained

contract disclaimers. For example, the acknowledgement form Plaintiff signed on February 22, 2017, stated, "I understand that this Handbook . . . should not be construed as, and does not constitute, a contract of employment, either express or implied." (Tannenbaum Decl. Ex. 2, Docket Entry No. 30-2 at 1.) The acknowledgement form Plaintiff signed on February 8, 1999, stated, "[n]othing contained in this handbook should be considered to be a contract or guarantee of employment." (Tannenbaum Decl. Ex. 3, Docket Entry No. 30-3 at 1.) The acknowledgement form Plaintiff signed on November 26, 2001, stated that "this handbook is not a contract of employment, express or implied, between me and [Wafra]." (Tannenbaum Decl. Ex. 4, Docket Entry No. 30-4 at 1.) And the acknowledgement form dated June 22, 2011, stated that, "this handbook is not a contract, express or implied, guaranteeing employment for any specific duration." (Tannenbaum Decl. Ex. 5, Docket Entry No. 30-5 at 1.)

Wafra's employee handbook contained rules of conduct that expressly prohibited Wafra employees from "working under the influence of alcohol, either on Wafra's premises or while conducting business-related activities off-premises," and from "using the organization's time and resources for personal gain and sending or posting confidential material outside of the organization." (Def. Counterclaims ¶¶ 9, 11.) According to Wafra, Plaintiff violated both rules. Plaintiff frequently used his work email to send personal emails and "regularly forwarded work-related emails containing Wafra's confidential, proprietary information . . . from his Wafra email account to his own personal email account." (Def. Counterclaims ¶¶ 12-13.) Wafra does not allege any additional facts regarding Plaintiff's alleged use of Wafra's confidential information. Further, during Plaintiff's employment with Wafra, multiple, unspecified Wafra employees observed Plaintiff consume alcoholic beverages during the workday, including at business lunches with Wafra employees and clients. (Def. Counterclaims ¶ 14.)

Mr. Leary initiated this action on January 3, 2018, and amended his complaint on March 13, 2018. On June 8, 2018, Defendant Wafra asserted counterclaims for breach of fiduciary duties and breach of contract. Both counterclaims are based on Plaintiff's "repeated" violations of the Wafra employee handbook. On June 22, 2018, Plaintiff moved to dismiss Defendants' counterclaims. (Docket Entry No. 25.) On August 31, 2018, Plaintiff moved for leave to assert claims of discrimination and retaliation under the ADA as well as retaliation claims based on Wafra's counterclaims. (Docket Entry No. 33.) Defendants oppose only the addition of claims based on Wafra's counterclaims.

DISCUSSION

Plaintiff's Motion to Dismiss

Plaintiff moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Defendant Wafra's counterclaims in their entirety. (See Docket Entry No. 25.) The standard applicable to a motion to dismiss counterclaims is the same as the standard applied to motions to dismiss a complaint. Walton v. Hadley, No. 13 Civ. 7907 ER, 2014 WL 3585525, at *3 (S.D.N.Y. July 10, 2014). In determining whether a plaintiff has set forth the "short and plain statement of the claim showing that [it is] entitled to relief" required by the Federal Rules (see Fed. R. Civ. P. 8(a)(2)), the Court looks to whether the allegations in the complaint establish the "facial plausibility" of the plaintiff's claims. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Such a showing "must be enough to raise a right to relief above the speculative level," requiring "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555

(internal quotation marks omitted). In deciding a Rule 12(b)(6) motion to dismiss, the Court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted).

*Breach of Fiduciary Duties*

Defendant Wafra asserts that, in committing "repeated violations of the rules of conduct codified in Wafra's employee handbook," Mr. Leary breached his fiduciary duties to Wafra, "including the fiduciary duties of loyalty, fidelity, and good faith." (Def. Counterclaims ¶¶ 26-27.) Specifically, Wafra asserts that "Leary breached his duty of loyalty when he repeatedly used Wafra's information systems to covertly send Wafra's confidential and proprietary business information to his Gmail address for personal use between February 2013 and August 2017, in violation of Wafra's workplace policies." (Defendant Wafra Inc.'s Memorandum of Law in Opposition to Motion to Dismiss Amended Counterclaims ("Def. Br."), Docket Entry No. 29 at 14.)

"Under New York law, at-will employees owe their employers a fiduciary duty of loyalty, including a duty not to use the employer's confidential information to compete with the employer." Mercer Health & Benefits LLC v. DiGregorio, 307 F. Supp. 3d 326, 353 (S.D.N.Y. 2018). "A breach of fiduciary duty, and generally in tandem, of loyalty, occurs when a fiduciary commits an unfair, fraudulent, or wrongful act, including misappropriation of trade secrets, misuse of confidential information, solicitation of employer's customers before cessation of employment, conspiracy to bring about mass resignation of an employer's key employees, or usurpation of the employer's business opportunity." DeWitt Stern Grp., Inc. v. Eisenberg, 257 F. Supp. 3d 542, 585 (S.D.N.Y. 2017) (internal quotation marks omitted). "[T]he gravamen of

fiduciary duty is 'undivided and undiluted loyalty,' . . . barring self-dealing, use of confidential information, and other conflicts of interest." Gortat v. Capala Bros., Inc., 585 F. Supp. 2d 372, 377 (E.D.N.Y. 2008), aff'd, 568 F. App'x 78 (2d Cir. 2014) (internal citations omitted).

Wafra's counterclaims are devoid of any allegation that Mr. Leary used Wafra's confidential information to compete against it, to divert Wafra's business opportunities, or to engage in financially advantageous self-dealing. While Wafra argues that misuse of confidential information alone constitutes a breach of fiduciary duty, the decisions Wafra cites—none of which is binding on this Court—do not provide support for its argument that the act of sending internal information to a personal email address, standing alone, constitutes a breach of fiduciary duty. See Carco Group, Inc. v. Maconachy, 383 F. App'x 73, 76-77 (2d Cir. 2010) (affirming district court's finding that the defendant had breached his fiduciary duty because he put and kept "a family member on the [employer's] payroll against his superior's direct orders[, which] benefit[ted] his own interests at the expense of his employer"); see also Mercer Health & Benefits LLC, 307 F. Supp. 3d at 353-54 (finding plaintiff likely to succeed on the merits of its breach of fiduciary duty claim where plaintiff provided evidence that defendants "took confidential information from [plaintiff] while they were employed at [plaintiff]," and "used [plaintiff's] proprietary . . . information to pitch current and prospective . . . clients about whom they had confidential information from [plaintiff]"); Levy v. Young Adult Inst., Inc., 103 F. Supp. 3d 426, 436 (S.D.N.Y. 2015) (upholding counterclaims against employee where employer alleged that, "through influence and manipulation of [employer's] compensation process and mismanagement of [employer's] finances," employee facilitated "excessive compensation for [himself] and government enforcement actions and heightened regulatory oversight against [employer]"). Without allegations demonstrating that Mr. Leary engaged in self-interested

conduct that negatively affected Wafra's interests, Wafra's counterclaims for breach of fiduciary duty fail to state claims upon which relief may be granted and must be dismissed.

Wafra further argues that Leary breached his duty of loyalty by acting as a "faithless servant." (Def. Br. at 14-15.) Under New York common law, "[o]ne who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary." Phansalkar v. Andersen Weinroth & Co., 344 F.3d 184, 200 (2d Cir. 2003) (citations omitted). In order to state a claim under the "faithless servant doctrine," the employer plaintiff must show "(1) that the employee's disloyal activity was related to the performance of his duties, and (2) that the disloyalty permeated the employee's service in its most material and substantial part." Schanfield v. Sojitz Corp. of Am., 663 F. Supp. 2d 305, 348 (S.D.N.Y. 2009) (internal quotation marks omitted). Acts of disloyalty are not "substantial" where "the disloyalty consisted of a single act, or where the employer knew of and tolerated the behavior." Phansalkar, 344 F.3d at 201-02.

Wafra's counterclaims fail to state a claim under the "faithless servant doctrine." Wafra has not specifically alleged how Plaintiff's alleged disloyalty substantially affected his job performance. Wafra alleges only that, "[b]etween 2014 and 2017, Mr. Leary's work performance suffered significantly, leading to underperformance by his clients' securities portfolios and causing his division to not be profitable." (Def. Counterclaims ¶ 23.) Wafra omits any facts concerning how its clients' portfolios "underperform[ed]," and it omits facts from which the Court could infer that Plaintiff's consumption of alcohol or forwarding of information to his personal email address contributed to such underperformance. The Court could just as easily infer that any such portfolio underperformance or lack of profitability was

caused by external market forces. Further, Wafra has not cited—and the Court has not found—any case holding that an employee's (i) on-the-job consumption of alcohol, (ii) use of company email for personal communications, or (iii) transmission of confidential information to personal email accounts, without additional allegations that such information was used to the employer's detriment, supported liability under the "faithless servant doctrine." Cf. Sanders v. Madison Square Garden, L.P., No. 06 Civ. 589 GEL, 2007 WL 1933933, at *5 (S.D.N.Y. July 2, 2007) (noting lack of precedential support for proposition that faithless servant doctrine applies whenever an employee violates work rules). Thus, Wafra has failed to allege sufficiently a connection between these activities and Plaintiff's job responsibilities.

Further, Wafra's allegations indicate that it "knew of and tolerated [Plaintiff's] behavior" for at least three years before taking disciplinary action against him. Wafra alleges generally that Plaintiff was observed working while intoxicated on several occasions "[d]uring the time that Mr. Leary was employed at Wafra." (Def. Counterclaims ¶ 14.) Plaintiff was employed with the company for 18 years. Defendant Wafra specifically alleges that Plaintiff's intoxication negatively impacted his job performance from 2014 to 2017—a three-year period. (Def. Counterclaims ¶ 23.) Defendant's counterclaims do not specify any occasion, other than his termination on August 29, 2017, upon which Plaintiff was disciplined for consuming alcohol while working. Thus, Defendant's allegations indicate that it "knew of and tolerated the behavior" for several years before taking any corrective action. For these reasons, Defendant's "faithless servant" claim must fail.

*Breach of Contract*

Wafra alleges that, "by working under the influence of alcohol and conducting business while intoxicated," and by "using his Wafra email account to send personal emails and

to forward confidential, proprietary information to his personal email account," Mr. Leary "breached his agreement with Wafra to comply with the terms of the employee handbook." (Def. Counterclaims ¶¶ 34-35.)  To state a claim for breach of contract, a "complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks omitted).  Wafra has failed to adequately allege (i) the existence of an agreement, and (ii) damages.

"To form a binding contract there must be a 'meeting of the minds,' such that there is 'a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.'"  Stonehill Capital Mgmt. LLC v. Bank of the West, 28 N.Y.3d 439, 448 (N.Y. 2016) (internal citations omitted).  The New York Court of Appeals has held that "employee manuals, handbooks and policy statements" containing contract disclaimers are not "binding employment agreements" because the "disclaimer prevents the creation of a contract."  Lobosco v. New York Tel. Co./NYNEX, 96 N.Y.2d 312, 317 (N.Y. 2001).  Here, both the Wafra employee handbook and the acknowledgement forms contained disclaimers that "prevent[ed] the creation of a contract."  Lobosco, 96 N.Y.2d at 317.[1]  Because the Wafra handbook explicitly stated that it was "not a contract," Mr. Leary could not have agreed to be contractually bound by its terms based merely on his receipt of the handbook and execution of acknowledgments.

---

[1] The Court can consider the Wafra employee handbooks and acknowledgement forms in connection with this motion practice because Wafra's counterclaims incorporate them by reference.  (See Def. Counterclaims ¶¶ 3-7; see also Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (finding that "[a] complaint is deemed to include . . . materials incorporated in it by reference").)

Wafra asserts, however, that Plaintiff agreed to be bound contractually by the terms of the employee handbook when he signed his initial offer letter to join Wafra as "Senior Vice President in charge of U.S. Fixed Income."  (Def. Br. at 7; Tannenbaum Decl. Ex. 1, Docket Entry No. 30-1 at 1-2.)  The relevant paragraph of the December 28, 1998, offer letter reads in its entirety as follows:

> Your appointment is subject to your acceptance of the terms and conditions contained in the enclosed employee handbook and following submission of the attached employment application.  You must acknowledge in writing your having read and understood all the terms and conditions contained therein prior to employment.  The application is a requirement due to the securities aspect of the firm, which has to follow certain SEC guidelines.

(Tannenbaum Decl. Ex. 1, Docket Entry No. 30-1 at 2.)  Wafra argues that execution of the offer letter was sufficient to render Plaintiff contractually bound to comply with the rules and policies in the handbook because "New York courts repeatedly have recognized that an employee handbook constitutes a valid contract between employer and employee where the employee expressly agrees to comply with its terms."  (Def. Br. at 6.)  However, none of the cases Wafra cites for this proposition is binding on this Court, and each is factually and/or procedurally distinguishable.  For example, in Apple Mortgage Corp. v. Barrenblatt, the court denied summary judgment where there remained a question as to whether the parties separately and explicitly agreed to be bound by a particular provision of the employee handbook.  162 F. Supp. 3d 270, 285 (S.D.N.Y. 2016).  Similarly, in both Currier, McCabe & Assocs., Inc. v. Maher, and Evans v. Ithaca Urban Renewal Agency, the Third Department upheld the plaintiff's breach of contract claim where the defendant had executed an employment contract that explicitly incorporated the terms of the employee handbook.  906 N.Y.S.2d 129 (3d Dep't 2010) (concluding that "[i]t was defendant's execution of this [separate employment agreement], and not any provision of the handbook, that created [the employee's] contractual obligations"); 613

N.Y.S.2d 446 (3d Dep't 1994) (finding employer bound by terms of employee handbook where employee was "employed pursuant to a one-year contract of employment whose terms incorporated the terms of the [employee handbook]"). These cases involved separate, employment agreements that explicitly incorporated the terms of the employer's handbook, rather than the offer letter involved here. In Pinsky v. JP Morgan Chase & Co., the court did not consider the question of whether a disclaimer in defendant's employee handbook precluded contract formation. See 576 F. Supp. 2d 559 (S.D.N.Y. 2008); see also Docket No. 07-Civ-3328, Entry Nos. 48 and 54.

        Here, the letter cited by Defendant is at best ambiguous as to whether it purported to incorporate the provisions of the employee handbook at all. Its express provisions merely required "acceptance of the terms and conditions contained in the . . . handbook" and a written acknowledgment of Plaintiff's understanding of those terms. As explained above, the handbook's terms included a specific disclaimer of contract formation.

        However, assuming that Wafra's initial offer letter incorporated the employee handbook such that Plaintiff was contractually bound by its terms while serving as Wafra's Senior Vice President in charge of U.S. Fixed Income, Defendant has alleged no facts sufficient to support an inference that the offer letter continued to govern the terms of Plaintiff's employment after Plaintiff was promoted to Head of Securities. See Lubliner v. Helmsley-Spear, Inc., 642 N.Y.S.2d 240, 241 (1st Dep't 1996) (holding that "[i]t is settled that where an employee under contract agrees to change positions, the previous employment contract comes to an end and a new relationship is formed"); see also Walsh v. Automatic Sys. Developers, Inc., 515 N.Y.S.2d 586, 587 (2d Dep't 1987) ("upon the plaintiff's agreement to change positions, the previous employment contract came to an end, and a new one took its place"). Wafra has not

alleged that any of the terms set forth in Plaintiff's initial offer letter carried over to govern Plaintiff's employment as Head of Securities, which was the position he held at the time of the alleged breach. Indeed, the February 2017 handbook acknowledgment that Defendant has proffered recites that Plaintiff's "continued employment is contingent on" compliance with Wafra's policies as stated in the handbook, and provides for disciplinary action "<u>up</u> <u>to</u> <u>and</u> <u>including</u> termination of my employment," but otherwise disclaims employment contract formation and nowhere purports to create a contract that would support an action for damages for breach. (<u>See</u> Tannenbaum Decl. Ex. 2, Docket Entry No. 30-2.)

Moreover, Wafra has failed to state a claim for breach of contract because it has not alleged plausibly that it suffered damages as a result of Plaintiff's breach. Wafra alleges in a conclusory fashion that "[a]s a direct and proximate result of Mr. Leary's breach, Defendant Wafra Inc. has been injured and suffered losses, including lost profits, lost business opportunities, and reputational harm." (Def. Counterclaims ¶ 36.) However, Wafra has not alleged any facts from which the Court could plausibly infer that Plaintiff caused any such damage to Wafra by "using his Wafra email account to send personal emails and to forward confidential, proprietary information to his personal email account." <u>See</u> <u>Jinno Int'l Co. v. Premier Fabrics, Inc.</u>, No. 12 Civ. 7820 LGS, 2013 WL 4780049, at *3 (S.D.N.Y. May 24, 2013) ("[w]ithout asserting any facts about how it was damaged . . . [defendant's] pleading fails to support an inference that it has actually suffered damages as a result of [plaintiff's] breach of any agreement"). Wafra does not allege that Plaintiff used Wafra's confidential information in any way that adversely affected Wafra. To the extent that Wafra's breach of contract claim stems from Plaintiff's "working under the influence of alcohol and conducting business while intoxicated," Wafra alleges only that such behavior resulted in poor performance. (Def.

Counterclaims ¶ 23.) Under New York law, Wafra's sole remedy for poor performance is termination. Kurniawati v. JI Club Corp., No. 12 Civ. 3494 PGG, 2013 WL 1225865, at *2 (S.D.N.Y. Mar. 20, 2013) ("an employer's sole remedy under New York law for an employee's poor performance is termination") (internal quotation marks omitted); see also Farricker v. Penson Dev., Inc., No. 07 Civ. 11191 DAB, 2010 WL 845983, at *2 (S.D.N.Y. Mar. 4, 2010) (same). Because Plaintiff's employment has already been terminated, Wafra has not demonstrated that it is entitled to further relief for Plaintiff's alleged breach of contract and Wafra has failed to state a breach of contract claim upon which relief may be granted. Cf. Fed. R. Civ. P. 8(a)(2) (pleading must show "that the pleader is entitled to relief").

Accordingly, Wafra's counterclaim for breach of contract is dismissed.

Plaintiff's Motion for Leave to Amend

Federal Rule of Civil Procedure 15 provides that the court may permit a party to amend its pleading when justice so requires. Fed. R. Civ. P. 15(a)(2). Such leave may be denied on grounds of futility, however, if the proposed amended pleading could not withstand a motion to dismiss, such as a motion under Rule 12(b)(6) for failure to state a claim. Griffith-Fenton v. Coldwell Banker Mortg., No. 13 Civ. 7449 VB, 2014 WL 6642715, at *1 (S.D.N.Y. Oct. 17, 2014); Oneida Indian Nation of N.Y. v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003) (citation omitted). The party opposing the motion to amend bears the burden of establishing that the amendment would be futile. Ballard v. Parkstone Energy, LLC, No. 06 Civ. 13099 RWS, 2008 WL 4298572, at *3 (S.D.N.Y. Sep. 19, 2008).

*ADA Claims for Discrimination and Retaliation*

Defendants do not oppose the addition of Plaintiff's proposed Sixth, Seventh, and Eighth Causes of Action for discrimination and retaliation under the ADA. (See Docket Entry

No. 39 at 1; PSAC ¶¶ 69-80.) Under Rule 15 of the Federal Rules of Civil Procedure, "a party may amend its pleading . . . with the opposing party's written consent." Fed. R. Civ. P. 15(a)(2). Therefore, Plaintiff's motion is granted as to the proposed Sixth, Seventh, and Eighth Causes of Action. (PSAC ¶¶ 69-80.)

*Retaliation Claims Based on Wafra's Counterclaims*

Plaintiff also seeks to amend his complaint to add claims pursuant to the ADEA, ADA, NYSHRL, and NYCHRL, based on Wafra's allegedly retaliatory counterclaims. (See PSAC ¶¶ 65-68, 81-84, 101-04, 125-28.) Defendants do not consent to these amendments. Plaintiff asserts that Defendants' counterclaims were filed in retaliation for filing this lawsuit, and that his reputation has been negatively affected as a result. As an initial matter, the Court denies Plaintiff's motion for leave to assert its proposed Fifth, Ninth, Fourteenth, and Twentieth Causes against Defendant Fawaz Al-Mubaraki, as Mr. Al-Mubaraki did not assert the allegedly retaliatory counterclaims. (See Def. Counterclaims.)

To establish a prima facie case of retaliation, a plaintiff must allege: (1) participation in a protected activity; (2) knowledge by plaintiff's employer of the protected activity; (3) that plaintiff suffered a "materially adverse" action; and (4) that there is a causal connection between the protected activity and the materially adverse action. Cerni v. J.P. Morgan Sec. LLC, 208 F. Supp. 3d 533, 538 (S.D.N.Y. 2016); Acheampong v. New York City Health & Hosps. Corp., No. Civ 9205 LTS, 2015 WL 1333242, at *12 (S.D.N.Y. Mar. 25, 2015). "Materially adverse actions" are those that might "dissuade[] a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); see also Alexander v. Possible Prods., Inc., 336 F. Supp. 3d 187, 196 (S.D.N.Y.

2018) (adverse actions under the NYCHRL must be "reasonably likely to deter a person from engaging in protected activity").

The parties do not dispute that Plaintiff has alleged adequately the first and second elements of his retaliation claim. There is a dispute, however, as to whether Plaintiff has suffered a "materially adverse" action. Wafra contends that Plaintiff could not have suffered an adverse employment action because Wafra filed its counterclaims months after Plaintiff was terminated. However, actions that may support retaliation claims are not limited to those affecting the Plaintiff's employment with the alleged retaliator. In the retaliation context, a materially adverse action is any action that might "dissuade[] a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68. This may include "actions injurious to . . . the ability to secure future employment." Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997) (emphasis omitted). "The terminated employee . . . may have tangible *future* employment objectives, for which he must maintain a wholesome reputation." Id. Actions injurious to the employee's reputation may be sufficiently "adverse" to support a claim of retaliation.

Plaintiff has pleaded plausibly that his reputation has been negatively affected by Wafra's claims that he mishandled the company's confidential information, and that, on more than one occasion, he reported to work while intoxicated. Indeed, prospective employers may be hesitant to hire an individual who is the subject of such allegations, which are public and readily accessible. Mr. Leary need not allege exactly how he has been affected by Wafra's allegations; Plaintiff's allegation that he has suffered "damage to his reputation," is sufficient at this stage to describe a "materially adverse action." Moreover, being forced to defend a federal lawsuit and

incur the associated legal costs could certainly dissuade a reasonable worker from making or supporting a charge of discrimination. See Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68.

Wafra also argues that Mr. Leary cannot establish the fourth element of his retaliation claim. According to Wafra, the Court cannot infer a causal connection from the temporal proximity between the filing of Plaintiff's complaint and the filing of its counterclaims because its counterclaims were compulsory under Rule 13 of the Federal Rules of Civil Procedure. Assuming, arguendo, that Wafra's counterclaims were indeed compulsory, this Court, like others in this District, "is unwilling to adopt a rule stating that compulsory counterclaims . . . cannot, as a matter of law, constitute retaliation in violation of the employment discrimination laws." Yankelevitz v. Cornell University, No. 95 Civ. 4593 PKL, 1996 WL 447749, at *4 (S.D.N.Y. 1996); see also Santi v. Hot in Here, Inc., No. 18 Civ. 3028 ER, 2019 WL 290145, at *5 (S.D.N.Y. Jan. 22, 2019). Here, Wafra had the opportunity to bring its claims against Mr. Leary well before he filed the complaint in this action. See Yankelevitz, 1996 WL 447749, at *6. Mr. Leary's alleged handbook violations date back as early as 2014 and last occurred in August 2017. Therefore, the Court finds sufficiently plausible at this pleading stage a causal connection based on the short period of time between the date on which Plaintiff filed his complaint and the date when Wafra asserted its counterclaims, the compulsory counterclaim provisions of the Federal Rules of Civil Procedure notwithstanding.

Defendant further argues that "compulsory counterclaims cannot be deemed retaliatory unless they are 'totally baseless.'" (Docket Entry No. 39 at 10-12.) The Court need not determine at this amendment stage whether Plaintiff will ultimately be able to demonstrate that the counterclaims are utterly baseless, although it bears noting that they have now been dismissed. "A counterclaim, like many adverse actions, may be meritorious or not, but that

determination cannot be made at the pleading stage without the benefit of discovery." Santi, 2019 WL 290145, at *5.

The Court concludes that Wafra has failed to meet its burden of demonstrating that Plaintiff's amendment would be futile. Ballard, 2008 WL 4298572, at *3. Therefore, the Court grants Plaintiff's motion for leave to amend to assert his proposed Fifth, Ninth, Fourteenth, and Twentieth Causes of Action against Wafra.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss Defendant Wafra's Counterclaims is granted in its entirety. Plaintiff's motion for leave to amend his complaint is granted as to Defendant Al-Mubaraki only for the Sixth, Seventh, and Eighth Causes of Action. Plaintiff's motion for leave to amend his complaint is granted in its entirety as to Defendant Wafra. Mr. Leary is directed to revise the proposed SAC to reflect the foregoing determinations and file the revised SAC within 14 days from the date hereof.

This Memorandum Opinion and Order resolves docket entry nos. 25 and 33.

SO ORDERED.

Dated: New York, New York
September 30, 2019

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge